ZEEFE, Appellant and Cross–Appellee,

v.

ZEEFE, Appellee and Cross–Appellant.

[Cite as *Zeefe v. Zeefe* (1998), 125 Ohio App.3d 600.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69975.

Decided Feb. 2, 1998.

602

*Wilsman & Schoonover, James M. Wilsman* and *Alice E. Rosen,* for appellant and cross-appellee.

*Lazzaro & Kraus* and *Michele M. Lazzaro,* for appellee and cross-appellant.

KARPINSKI, Judge.

Plaintiff-appellant, Mary Zeefe, appeals from the judgment of the trial court, which granted Mary a divorce from her husband Roger S. Zeefe. On appeal, Mary argues that the trial court erred by (1) not indicating the basis for spousal support, (2) not properly calculating Roger's child support obligation, (3) under-valuing Roger's business, (4) not ordering Roger to pay interest on his portion of the property settlement, and (5) incorrectly awarding attorney fees. In response, Roger contests these assignments and raises his own cross-assignments of error, which argue that the trial court erred by (1) awarding any spousal support at all, (2) not imputing potential income to Mary, (3) awarding any attorney fees, (4) awarding Mary the marital residence, and (5) failing to specifically award substantial portions of the marital property to either Mary or Roger. For the reasons that follow, we find merit to Mary's first and fifth assignments in whole and second assignment in part, as well as Roger's first, third, and fifth cross-assignments of error. We therefore remand the cause in order for the trial court

to make a complete and specific division of all the marital property and to specify the factors used to determine the amount of spousal support.

Roger and Mary were married on June 4, 1982. One child, Ryan, was born to the couple during the marriage. In 1989, Roger became sole shareholder of One Stop Auto Parts, Inc. This business did quite well and allowed the parties to enjoy a lifestyle which included a home in Shaker Heights, country club membership, and a collection of expensive antiques and porcelain, as well as other amenities. Mary worked part-time and earned $23,000 a year.

Mary filed for divorce on August 19, 1993. Eleven months later, the parties filed a shared parenting plan which was adopted by the trial court. The case proceeded to trial in November 1994 and continued off and on until November 1995. After the trial court issued its judgment entry, Mary timely appealed.

A. Spousal Support

Mary's first assignment states as follows:

"I. The trial court erred and abused its discretion by not indicating the basis for its spousal support award."

Rogers first cross-assignment concerns the same issue of spousal support and states as follows:

"I. The trial court erred and abused its discretion by not indicating the basis for its spousal support award and, further, the trial court properly addressed the issue of temporary support."

In both assignments, the parties point out that the trial court erred by not indicating in sufficient detail the basis for its award of spousal support to Mary. Additionally, Mary argues that the trial court failed to properly address the issue of temporary support. We agree with Mary and Roger that the trial court failed to provide a sufficient explanation of its award. Additionally, the trial court erred by not specifying temporary spousal support and child support separately and failing to determine temporary child support under the guidelines.

In *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 97, 518 N.E.2d 1197, 1201–1202, the Supreme Court stated, "In allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Interpreting this requirement, many appellate districts have held that the trial court itself, not merely the record, must explain the basis for spousal support. *Schneider v. Schneider* (1989), 61 Ohio App.3d 164, 572 N.E.2d 221; *Kaechele v. Kaechele* (1989), 61 Ohio App.3d 159, 572 N.E.2d 218; *Layne v. Layne* (1992), 83 Ohio App.3d 559, 615 N.E.2d 332; *Graham v. Graham* (1994), 98 Ohio App.3d

396, 648 N.E.2d 850; *Shepherd v. Shepherd* (Aug. 31, 1995), Cuyahoga App. No. 68242, unreported, 1995 WL 517051. But, see, *Carman v. Carman* (1996), 109 Ohio App.3d 698, 672 N.E.2d 1093. More important, we are controlled by an opinion this court previously published, *Moro v. Moro* (1990), 68 Ohio App.3d 630, 589 N.E.2d 416, adopting this interpretation of *Kaechele.*

The benefit of having the trial court explain the rationale for the spousal support award is highlighted by the case at bar. In the journal entry, the trial court stated merely that Roger is obligated to pay Mary $2,550 a month in spousal support. Both parties agree that the court gave no reasons for this decision, and both parties argue that the decision was defective because of this omission. Mary contends that the award is inadequate, and Roger argues that it is unwarranted because the trial court made no finding of her needs in order to justify an award of spousal support.

As we indicate later (see Mary's Assignment of Error No. 2), the trial court failed to consider Roger's gross income when it calculated child support. Citing Roger's W–2, the court noted only what was a "reasonable salary." It did not consider other possible sources of income, such as what his company paid for Roger's car, country club membership, meals, and trips, for example. R.C. 3105.18 expressly requires the court to consider "[t]he income of the parties, from all sources," when it awards spousal support. In this case the court did not.

There is another problem as well. In the transcript, the trial judge described the wife's total needs as follows:

"THE COURT: I think it has already earlier been established that her total needs are something between 4 and $5,000 a month despite the projections here on the pretrial statement.

"And it has also been established that of those needs, part of it is contributed from her own earnings.

"I don't see any point in continuing with this line of cross-examination."

Before taxes, the award of $30,600 a year ($2,550 per month) combined with her salary of $23,200 would not meet what the court found to be the maximum ($60,000 or $5,000 a month) in her range of needs. After taxes, it is unlikely that the award would meet even her minimum needs ($48,000 or $4,000 a month). Even after being adjusted for a standard exemption and deduction, gross income of $53,800, taxed at the lower rate of fifteen percent, would be reduced to approximately $46,500.

These computations are not in the record. Nor should an appellate court be asked to provide such analysis. That is the task of the lower court. As the Eleventh Appellate District Court has repeatedly explained:

"While there is some evidence which arguably supports the award, it would be improper for this court to perform the intermediate analytical steps which the trial court neglected to recite. We refuse to speculate regarding the deliberative process employed by the trial court in reaching its spousal support award. 'The better approach is to remand this case in order that the trial court may comply with the mandates of the *Kaechele* case by setting forth the basis for its decision.'" *Herman v. Herman* (Mar. 28, 1997), Portage App. No. 96–P–0194, unreported, 1997 WL 158106, quoting *Schneider,* 61 Ohio App.3d at 168, 572 N.E.2d at 224.

The rule of paragraph two of the syllabus of *Kaechele* is clear that "the trial court must indicate the basis for its award * * *." We cannot tell from either the record or the judgment entry whether the court considered "the income of the parties from all sources," as the statute requires, and how the court satisfied the wife's needs as the court itself described them. Therefore, without expressing a decision on the amount of the award, we remand the cause and order the trial court to revisit the issue of spousal support and specifically explain the basis for its decision.

Finally, Mary makes two arguments regarding temporary support. First, Mary argues that the trial court failed to consider the factors in R.C. 3105.18(C)(1) when it calculated spousal support. Second, she contends that the court failed to present any child support calculations pursuant to R.C. 3113.215. The trial court made the following finding in the journal entry:

"Defendant's making 27 months of payments to the Plaintiff of $3,200.00 per month for child support, spousal support, automobile and homeowner's insurance, mortgage payment and child's medical bills. That by reason of the foregoing payments acknowledged by the Plaintiff, the Court finds that said payments constitute temporary support both for the minor child and for the Plaintiff for the period involved, and therefore makes no further finding or order with reference to temporary spousal support and child support."

■ The trial court's decision to address temporary spousal and child support together has created a problem, because we cannot determine what portion is allocated for child support and what for spousal. Under R.C. 3105.18(B), a trial court is not required to consider all the factors of R.C. 3105.18(C) when it orders temporary spousal support; the court is required merely to award a reasonable amount of temporary support. Without knowing the amount, however, we cannot review its reasonableness.

■ Mary's second argument is that a trial court is required under R.C. 3113.215 to perform the calculation for temporary child support. This point is well taken. Since we are remanding this cause for a proper calculation of Roger's

child support obligation (Assignment of Error No. 2), we further instruct the trial court to calculate Roger's temporary support obligation during the pendency of this litigation and specify the spousal amount separate from the child support.

Accordingly, Mary's first and Roger's first assignments of error are well taken.

B. Award of Marital Property

Roger's fifth cross-assignment of error states as follows.

"V. The trial court erred and abused its discretion in failing to clearly designate its award of specific marital assets to the respective parties when providing an equitable division of marital property."

Under this assignment, Roger argues that the trial court failed to award much of the marital property to either Roger or Mary. Roger points out that the court never specifically stated what assets will be awarded to him.[1] Mary's response to this argument is that "[a]lthough the Trial Court never expressly awarded the balance of property to Mr. Zeefe, presumably the assets will remain in the possession or control of the party in whose name the asset is titled, or who has possession of the item."

We agree that the journal entry is unclear as to the final division of certain property. It is clear that the court found the total marital assets to be $862,163.37 and that Mary was entitled to fifty percent, which equaled $431,-081.68. Mary was awarded the marital residence with an equity value of $213,697.11, as well as two cars, valued at $14,900 and $3,800. The house, but not the two cars, was credited toward Mary's fifty-percent share.

The court additionally awarded to Roger the Nippon porcelain and ordered him to pay Mary her fifty-percent share in the form of other property. The remaining awards by the court are either incomplete or inaccurate. In the journal entry, the court notes that the value of Roger's Jackson Life Insurance policy is $34,560 and the value of Mary's North American Life Insurance policy is $6,330; however, the court failed to award these respective policies to either party. The court also awarded two Kemper IRAs to Roger and one Kemper IRA to Mary. The Kemper IRA numbers in the journal entry (Nos. 5748, 5751 and 5749) do not match the Kemper IRA numbers listed in the journal entry (Nos. 5756, 5752 and 5750). Either the numbers are inaccurate or three IRAs were not awarded. Furthermore, the court stated that the Charter One IRA is worth $9,600 and that Mary should be compensated for her fifty-percent share from other assets. This award is ambiguous because, first, the court never states that the Charter One IRA is awarded to Roger and, second, the list of marital assets identifies two Charter One IRAs with a combined value of $9,600.

---

1. No one contests that the court clearly awarded the two cars and the marital home.

Finally, the remaining bulk of the marital estate is not specifically awarded to either party. The court makes no mention of the following assets:

| | |
|---|---:|
| R–H Management | $40,000 |
| Corporate Stock One Stop Discount Auto Parts | $320,000 |
| Rooney [sic] and Company | $4,532 |
| Vanguard | $33,532 |
| Greenwood Trust | $1,739 |
| Paine Webber | $22,278 |

It is axiomatic that under Ohio law, in divorce proceedings, the trial court "shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). A trial court speaks only through its journal. *State ex rel. Worcester v. Donnellon* (1990), 49 Ohio St.3d 117, 118, 551 N.E.2d 183, 184. A divorce decree which does not dispose of the property between the two parties is insufficient and incomplete. *Rowe v. Rowe* (1990), 69 Ohio App.3d 607, 591 N.E.2d 716. If a trial court leaves issues unresolved, the case must be remanded for the court to determine. *Taylor v. Taylor* (1981), 2 Ohio App.3d 79, 2 OBR 87, 440 N.E.2d 823.

We agree with Roger that it is not the job of this court to guess as to the interpretation of journal entries. Accordingly, we find merit in Roger's fifth assignment of error and remand this cause and order the trial court to delineate specifically which asset is awarded to each party and to resolve the conflicts noted above. Additionally, the court should also specify what amount, if any, Roger owes Mary in order to equalize the property division.

C. Child Support

Mary's second assignment contests the trial court's calculation of child support and states as follows:

"II. The trial court erred and abused its discretion by not calculating child support pursuant to the guidelines, by not using appellee's gross income for purposes of calculation and by failing to determine if a deviation was in the minor child's best interest."

In the case at bar, the parties agreed to shared parenting. In order to determine the parties' child support obligations, the court calculated Roger's child support obligation under the guidelines ($1,089.27) and then subtracted Mary's child support under the guidelines ($362.44), which calculations resulted in Roger owing $726.83 a month in child support. Mary posits two arguments in support of this assignment. First, she contends that the method of subtracting one obligation from another resulted in an impermissible deviation from the child support guidelines. Second, she argues that the court erred in using $120,000 as Roger's salary when it applied the guidelines. Neither argument warrants reversal.

A domestic relations court's decision regarding the amount of child support is reviewed under the abuse-of-discretion standard. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028. In the case at bar, the parties entered into a shared parenting plan. A number of appellate courts have held that a trial court does not abuse its discretion by deviating from the guidelines when it calculates child support under such a plan. These courts explain that it is equitable for parents under a shared parenting plan to receive credit for the time they have custody of the child. *Eickelberger v. Eickelberger* (1994), 93 Ohio App.3d 221, 638 N.E.2d 130; *Cox v. Cox* (Apr. 8, 1997), Franklin App. Nos. 96APF07–889 and 96APF08–990, unreported, 1997 WL 170303; *Weddell v. Weddell* (June 29, 1994), Montgomery App. No. 14274, unreported, 1994 WL 312933; *Looker v. Looker* (Dec. 29, 1992), Franklin App. No. 92AP–1064, unreported, 1992 WL 394860; *Pauly v. Pauly* (Apr. 26, 1996), Lucas App. No. 1–95–293, unreported, 1996 WL 199185. We agree with these courts and find that the trial court did not abuse its discretion in the manner in which it calculated child support.

However, the trial court did err in computing the amount of Roger's income for child support. Mary argues that the court determined only a reasonable salary for Roger and did not make a finding of Roger's gross income or consider the substantial benefits Roger receives through One Stop.

R.C. 3113.215(A) defines income for purposes of child support and states in pertinent part as follows:

"(1) 'Income' means either of the following:

"(a) For a parent who is employed to full capacity, the gross income of the parent;

"(2) 'Gross income' means * * * the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, * * * and all other sources of income; * * * *self-generated income;* and potential cash flow from any source.

"(3) 'Self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. 'Self-generated income' includes *expense reimbursements* or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including, but not limited to, *company cars,* free housing, *reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.*" (Emphasis added.)

This definition of "income" is intended to be both broad and flexible. *Perusek v. Perusek* (Apr. 18, 1996), Cuyahoga App. No. 69299, unreported, 1996 WL 191758.

It is axiomatic that a trial court speaks through its journal entry. In the case at bar, the court stated in its journal entry that $120,000 was a *reasonable salary* for Roger. The court does not mention what Roger's *gross income* is, nor does the court mention any retained earnings of One Stop or Roger's car, country club membership, numerous meals, and trips—all paid for by One Stop. See *Bowen v. Thomas* (1995), 102 Ohio App.3d 196, 201, 656 N.E.2d 1328, 1331–1332, which held that a trial court abuses its discretion in the calculation of gross income when it considers merely a tax return of a sole shareholder of a corporation as opposed to scrutinizing all corporate and personal records in order to clarify the parent's actual benefit from the corporation. Upon remand, the trial court is instructed to consider these items in the computation of Roger's gross income for purposes of child support.

Accordingly, Mary's second assignment is well taken in part and overruled in part.

D. Valuation of the Business

In this assignment, Mary argues that the trial court undervalued Roger's car parts business. This third assignment states as follows:

"III. The trial court erred by determining that One Stop Discount Auto Parts, Inc. had a fair market value of $320,000."

A central issue in this case is the value of Roger's business. In calculating the business value to be $320,000, Roger's expert, Radd Reibe, used both the "operating earnings" and "net asset value" methods and averaged them. Mary's expert, Scott Finerman, however, employing the "formula method," valued the business at $739,149. The trial court heard extensive testimony from the two experts and chose the figure submitted by Roger's expert.

Each party finds fault with the methods the other's expert used in valuing the property. Mary observes that her husbands expert did not consider good will, ignored some assets, and based evaluations on publicly held corporations. Roger observes, on the other hand, that Mary's expert, viewing only one out of three store locations, did not personally appraise the property and equipment; failed to adjust for the initially low purchase price of inventory through bankruptcy; ignored that the three stores were "not updated," and had minimal advertisement and increased competition; included leasehold improvements in valuation; and in estimating good will used a formula approach IRS permits only if no better basis is available. The burden rests with Mary to persuade this court that it is irrational to rely upon the method Roger's expert

used rather than hers. She does not develop her criticisms sufficiently, however, to meet such a burden.

When determining the value of a marital asset, a domestic relations court is not required to use a particular valuation method. *James v. James* (1995), 101 Ohio App.3d 668, 681, 656 N.E.2d 399, 407–408; *Focke v. Focke* (1992), 83 Ohio App.3d 552, 554, 615 N.E.2d 327, 328.

With all the methods flawed, it was not unreasonable for the court to accept the testimony of Roger's expert if only because he had substantial experience in evaluating over eight hundred businesses in his career and, unlike Mary's expert, personally viewed all three locations. It was within the province of the trial judge to find this testimony "more accurate and more reasonable." Accordingly, Mary's third assignment is overruled.

E. Interest Owed on Mary's Share of Marital Property

Mary's fourth assignment of error states as follows:

"IV. The trial [*sic*] erred by awarding over one–half of appellant's property division to her in periodic monthly payments over a six year period and then, by failing to award her interest on the same."

Mary argues that she should have been awarded interest on the amount of money Roger has to pay her to equal out the property division. The trial court chose to equalize the property division by ordering Roger to pay Mary $3,000 a month in addition to her spousal support. Mary's argument that she should receive interest on this amount lacks merit. The trial court compensated her for the lack of interest by awarding her the two cars and not counting these two cars against her half of the marital estate. There is no requirement, moreover, that a trial court award interest on the payment of property division over time, that decision being left to the sound discretion of the trial judge. *Koegel v. Koegel* (1982), 69 Ohio St.2d 355, 357, 23 O.O.3d 320, 321–322, 432 N.E.2d 206, 207; *Sergi v. Sergi* (July 31, 1996), Summitt App. No. 17476, unreported, 1996 WL 425914; *Clark v. Clark* (Feb. 8, 1995), Summit App. No. 16516, unreported, 1995 WL 48408. Accordingly, Mary's fourth assignment is overruled.

F. Attorney Fees

Mary's fifth and Roger's third assignments both concern the award of attorney fees. Mary's fifth assignment states as follows:

"V. The trial court erred and abused its discretion in the amount and manner it awarded attorney fees and expenses."

Roger's third assignment states as follows:

"III. The trial court erred and abused its discretion in the amount and manner it awarded attorney fees and expenses, when there was no determination or finding of need, ability to pay and that appellant would be prevented from fully litigating her rights and adequately protecting her interests."

In both of these assignments, Mary and Roger attack the manner in which the trial court awarded attorney fees. In its journal entry, the trial court noted that Mary's claim of attorney fees amounted to $90,852.50 and litigation expenses amounted to $25,687.53, for a total of $116,540.03. The trial court felt that this amount was excessive. The court then "ordered" that the reasonable value of Mary's attorney fees was $40,000 and the reasonable value for expenses was $15,000, for a total of $55,000. Of this $55,000, the court ordered Roger to pay $30,000 as spousal support and Mary to pay her attorney the remaining $25,000. The court then stated as follows:

"The amount as set forth herein shall constitute a finding of *res judicata,* and neither Plaintiff nor Defendant shall be obligated to pay any additional fees to cover Plaintiff's attorney's fees or expenses. Further, the attorney for Plaintiff is ordered and precluded from pursuing any further collection against her client."

R.C. 3105.18 permits a trial court to award reasonable attorney fees from one party to another. This statute does not permit a court to determine, however, the amount of fees between a client and her own attorney. Attorney fees are a matter of contract between those two parties. Recently, this court held as a nullity a domestic relations court order that an attorney could not collect the unpaid balance of fees from his client. *Seelie v. Coombs* (Oct. 9, 1997), Cuyahoga App. No. 71883, unreported, 1997 WL 626014. This court further stated that the domestic relations court exceeded its jurisdiction in determining the fees attorneys can collect from their clients and that the proper recourse for an attorney would be to adjudicate the claims for monies due in a court of competent jurisdiction. That holding applies to the facts in the case at bar. Accordingly, although we find no abuse of discretion in the amount of attorney fees the court awarded, *Rand v. Rand* (1985), 18 Ohio St.3d 356, 359, 18 OBR 415, 417–418, 481 N.E.2d 609, 612, we reverse the trial court's order limiting attorney fees. On remand, the trial court shall consider the factors under R.C. 3105.18(H), and limit its order to those attorney fees that a domestic relations court may award as part of spousal support.

G. Mary's Income

Roger's second cross-assignment states as follows:

"II. The trial court erred and abused its discretion by not imputing 'potential income' to wife, as a result of her voluntary underemployment, when calculating child support."

In this assignment, Roger argues that the trial court erred by not imputing potential income to Mary for purposes of calculating child support. Mary responds that the trial court did not err in failing to impute income to her, because the court never found that she was voluntarily unemployed or underemployed. Such a finding is a prerequisite for imputing income.

This assignment lacks merit. The trial court declined to find that Mary, who works part-time as a bookkeeper, was voluntarily underemployed. This decision is left to the sound discretion of the trial court. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218. The trial court did not abuse its discretion, especially in light of the fact that Mary has a past history of carpal tunnel syndrome and tendinitis. Accordingly, Roger's second cross-assignment of error is overruled.

H. Marital Residence

Roger's fourth cross-assignment of error argues that the trial court erred by determining the entire marital residence to be marital property, because Roger contributed premarital funds to the down payment of the home. This cross-assignment states as follows:

"IV. The trial court erred and abused its discretion as it related to the disposition of the marital residence."

Under R.C. 3105.171, a trial court must classify property as marital or separate before awarding the property. The party seeking to establish that an asset or portion of an asset is separate has the burden of proof by a preponderance of the evidence. *Peck v. Peck* (1994), 96 Ohio App.3d 731, 645 N.E.2d 1300. In the case at bar, Roger argues that his premarital contribution toward the home was traceable. A determination of traceability is a finding of fact. *James v. James* (1995), 101 Ohio App.3d 668, 656 N.E.2d 399. A factual finding of the trial court will be reversed only if it is found to be against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Judgments supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. *Id.*

In the case at bar the trial court did not make an explicit finding regarding the traceability of the down payment money. The court did find, however, the home to be marital property. Roger argues that his premarital funds were used as the exclusive source of the $91,300 down payment for the home. Roger points, *inter alia,* to checks drawn on various accounts prior to the purchase of the home as evidence of his premarital contributions. After noting that there were no canceled checks proving that the money went into the purchase of the house, the trial court stated, "Then we can't assume that these checks went in to the house?" This rhetorical question implies that the claimed

contribution was not traceable. Nor was there any evidence in the record to support Roger's claim that it was. Accordingly, the trial court did not abuse its discretion in its disposition of the marital residence.

*Judgment reversed*
*and cause remanded.*

NAHRA, J., concurs.

PORTER, P.J., concurs, and concurs in judgment only as to Assignment of Error No. 1 and Cross–Assignment of Error No. 1.