OPINION
This appeal emanates from the Lake County Court of Common Pleas, Domestic Relations Division. Appellant, Dennis A. Anthony, appeals the trial court's child support calculation in its judgment entry dated September 22, 1998.
Appellant and appellee, Ann M. Anthony, were married on September 12, 1986. Two children were born as issue of the marriage: Lauren Elizabeth, born November 6, 1991 and Brian Allan, born January 25, 1994. Appellant filed for divorce on October 11, 1994. Appellant and appellee's marriage was terminated pursuant to a divorce decree issued on June 8, 1995, which also incorporated a shared parenting plan and set forth the child support obligations. Both appellant and appellee have since remarried.
On April 24, 1997, appellant filed a motion to modify child support because of a substantial change in circumstances. A hearing on the motion to modify was held on January 23, 1998, before a magistrate and a decision was released on March 3, 1998. The trial court adopted the magistrate's decision on March 9, 1998. Appellant filed objections to the magistrate's decision. Appellee filed a response to appellant's objections and also filed her own objections to the magistrate's decision. The trial court remanded the matter to the magistrate for further action.
On June 10, 1998, the magistrate issued another decision. Appellant filed objections to that finding. On July 2, 1998, the trial court adopted the magistrate's decision. Subsequently, on July 7, 1998, appellant filed a motion for relief from judgment. Ultimately, the trial court issued a judgment entry dated September 22, 1998. Appellant claimed that the magistrate erred by including daycare expenses in the child support calculations. The trial court agreed and decided that childcare costs should not be included in the calculations. Additionally, appellant argued that appellee presented no evidence to correct any deviation after applying a calculation pursuant to Luke v. Luke (Feb. 20, 1998), Lake App. No. 97-L-044, unreported. However, the trial court did not accept appellant's contention and determined appellant's child support to be $360.35 per month for each child, which was an increase from an earlier award.
Specifically, in its September 22, 1998 entry, the trial court agreed with the magistrate's reasoning and found that appellant had the children for 36.8% percent of the time versus the 31% of the time he had them when the marriage first ended. The magistrate further held that applying Luke to the calculation was destructive and not in the best interests of the children. The trial court went on to state that before applying Luke, appellant's annual child support obligation was $9,180.79, but since he had the children 5.8% more of the time than he did at the time of the divorce, his net annual obligation should be reduced to $8,648.30. According to the trial court, after applying Luke, appellant's annual support obligation would only be $3,159.08.[1] Therefore, the trial court reasoned that it would be "unjust, inappropriate, and not in the best interests to apply the child support after Luke per the statutory schedule and a deviation should be granted." Appellant timely filed the instant appeal and now asserts the following assignment of error:
 "The court erred in its calculation of child support."
Appellant's sole contention is that the trial court calculated child support contrary to Luke. Appellant claims that the trial court erred in not applying Luke to the instant matter.
The issues raised in this appeal require a discussion of R.C. 3113.21.5(B)(6)(a), the Supreme Court of Ohio decision in Pauly v.Pauly (1997), 80 Ohio St.3d 386, and our Luke decision.
The procedure for determining the child support obligation under R.C. 3113.21.5 is mandatory and must be followed in all aspects. Marker v. Grimm (1992), 65 Ohio St.3d 139, paragraph two of the syllabus. R.C. 3113.21.5(B)(6)(a) sets forth the requirements for deviating from a child support worksheet in a shared parenting context. In order for a deviation to be appropriate, the statute requires that the amount ascertained by utilizing the worksheet be unjust or inappropriate to the children or either parent and that the amount determined not be in the best interests of the children because of "extraordinary circumstances of the parents" or as a result of any of the factors set forth in R.C. 3113.21.5(B)(3).[2] R.C. 3113.21.5(B)(6)(a). Specifically, R.C. 3113.21.5(B)(6)(a) provides:
 "If the court issues a shared parenting order in accordance with section 3109.04 of the Revised Code, the court shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in division (E) of this section, through line 24, except that, if the application of the schedule and the worksheet, through line 24, would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in division (B)(3) of this section, the court may deviate from the amount of child support that would be ordered in accordance with the schedule and worksheet * * *."
Further, the trial court must make findings of fact that support these conclusions. Id. In deciding to deviate, the trial court may consider the relative financial resources of the parents, extended visitation, and any other relevant factor. R.C. 3113.21.5(B)(3).
In Pauly, the Supreme Court of Ohio addressed the issue of "whether a parent paying child support under a shared parenting plan is entitled to an automatic credit for the time his children reside with him." Pauly, 80 Ohio St.3d at 387. The Supreme Court of Ohio held that:
 "R.C. 3113.21.5(B)(6) does not provide for an automatic credit in child support obligations under a shared parenting order. However, a trial court may deviate from the amount of child support calculated under R.C. 3113.21.5(B)(6) if the court finds that the amount of child support would not be in the best interest of the child." Pauly at syllabus.
In reaching its conclusion, the Supreme Court of Ohio explained that R.C. 3113.21.5(B)(6)(a) should be used to compute child support payments under a shared parenting order. Id. at 387-388. A residential parent's obligation is not presumed to be spent on the child because R.C. 3113.21.5(B)(6), which applies to shared parenting agreements, makes no such provision. Luke, supra, unreported, at 12.
In Luke, this court employed the Pauly analysis to a child support calculation in the context of a shared parenting agreement and held that in applying R.C. 3113.21.5(B)(6)(a):
 "[I]t follows from Pauly
and the statute that both parents under a shared parenting plan are required to pay child support as calculated in the child support worksheet. In our considered opinion, this would suggest an `offset' of one obligation from the other, rather than two support orders. Although the Pauly court did not expressly so hold, it is reasonable to conclude from its decision that before a court reaches the issue of whether to deviate from the guidelines by giving a parent credit for the time the child resides with that parent it must first offset each parent's child support obligation from the other's." Id. at 12-13. (Emphasis sic.)
Therefore, as a result of the Supreme Court's decision in Pauly and our decision in Luke, the trial court must first calculate the parties' child support obligations implementing the worksheet provided in R.C. 3113.21.5(E). Second, using line 24 of that worksheet, subtract the smaller support obligation from the larger obligation, the difference being the "net order" that must be paid by the obligor parent. This is the amount of child support to be paid pursuant to the worksheet. Id. at 13.
However, we would reiterate that the trial court has discretion to deviate from the amount resulting from the worksheet if it "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in [R.C. 3113.21.5(B)(3)]." R.C. 3113.21.5(B)(6)(a); see, also, Beard v. Beard (Sept. 25, 1998), Portage App. No. 97-P-0109, unreported, at 6. Pursuant to R.C. 3113.21.5(B)(6)(b)(i), "`extraordinary circumstances of the parents'" includes "[t]he amount of time that the children spend with each parent." When deviating in this manner, the trial court must set forth findings of fact that support its determination. R.C. 3113.21.5(B)(6)(a).
It is well-established that a trial court's decision regarding the amount of child support falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Furthermore, "[a] number of appellate courts have held that a trial court does not abuse its discretion by deviating from the guidelines when it calculates child support under such a plan."Zeefe v. Zeefe (1998), 125 Ohio App.3d 600, 610.
In the case at bar, the trial court computed the child support pursuant to Luke by offsetting the parties' respective child support obligations. Yet, our calculations reveal:
Appellant Appellee
1. Income $54,571.98 $35,934.68
2. Amount of taxes to be paid 863.98 710.70
3. Adjusted Income $53,708.00 $35,223.98
COMBINED INCOME $88,931.98
 4. % of parent's income to total income 60.39% 39.61%
 BASIC SUPPORT OBLIGATION PURSUANT TO R.C. 3113.21.5 $15,202.50
 5. Total support obligation per year (Line 4 * $15,202.50) $ 9,180.79 $ 6,021.71
 Since the trial court reduced appellant's obligation by 5.8%, appellant's total obligation was decreased by $532.49. Therefore, appellant's modified child support obligation totals $8,648.30 ($9,180.79 — $532.49).
 After applying Luke, appellant's and appellee's obligation would offset each other, and thus, appellant's obligation would be $2,626.59 (appellant's modified obligation of $8,648.30 less appellee's obligation of $6,021.71).[3]
 Moreover, the trial court deviated from the amount of child support calculated under R.C. 3113.21.5(B)(6) after discovering that the amount of child support would not be in the best interests of the child. The trial court ordered the deviation after determining that the amount of child support computed pursuant to Luke was unjust, inappropriate, and not in the best interests of the children.
Additionally, the record in this case indicates that a number of items were provided for the trial court to consider. Specifically, in deciding to deviate from the child support guidelines, the trial court set forth, in its "Child Support Deviation Findings of Fact and Conclusions of Law," that it considered the amount of time the children spend with appellee (63.2%) versus the amount of time they spend with appellant (36.8%) and appellant's and appellee's employment history and income. Furthermore, appellant did not demonstrate that the trial court committed an abuse of discretion in calculating his child support obligation. Accordingly, it is our determination that since there was no abuse of discretion, the trial court's resolution was proper.
For the foregoing reasons, appellant's assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas, Domestic Relations Division is affirmed.
CHRISTLEY, J., O'NEILL, J., concur.
[1] We note that our calculation of appellant's annual child support obligation, after applying Luke, differs from the trial court's conclusion. Our computation indicates that appellant's support obligation should be $2,629.59 rather than $3,159.08.
[2] R.C. 3113.21.5(B)(3) lists several factors a court may consider to determine whether an amount of child support is unjust or inappropriate and not in the best interests of a child.
[3] Even though our figure of $2,626.59 is less than the trial court's computation of $3,159.08, the outcome of this case would still remain the same. The trial court reasoned that to award appellee the amount of child support as calculated pursuant to Luke would be inequitable and not in the best interests of the children. We agree with the trial court's logic.