OPINION
{¶ 1} This is an appeal from the judgment of the Domestic Relations Division of the Hancock County Court of Common Pleas which granted a divorce and separated the property of Plaintiff-Appellee, Diane Bell, and Defendant-Appellant, Craig Bell.
 {¶ 2} Diane and Craig were married in June, 1973. Diane has worked as a teacher since 1973, and Craig worked for his family's business, Bell Security Service, Inc. between 1975 and 1997. In 1997, it was discovered that Craig had stolen more than $100,000 from one of Bell Security's customers. Craig and Diane gave Bell Security a $50,000 loan so that Bell Security could pay back the stolen funds to its customer. In November of 1997, Craig and Diane separated and on June 9, 1998, Diane filed for divorce. After a hearing, the magistrate filed his decision on July 6, 2001 recommending that the divorce be granted and the manner in which the property should be divided. On July 20, 2001, Craig filed objections to the magistrate's decision which were sustained in part and overruled in part on February 12, 2002. On April 2, 2002, the trial court issued its final decision and order.
 {¶ 3} Craig now appeals asserting five assignments of error, which will be discussed together. "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ITS FAILURE TO INCLUDE IN THE PROPERTY DIVISION UPON DIVORCE, A MARITAL ASSET NOTE PAYMENT COLLECTED BY THE APPELLEE WIFE." 2. "THE TRIAL COURT COMMITTED ERROR BY GRANTING TO THE PLAINTIFF, A CREDIT AGAINST THE PROPERTY DIVISION FOR HER EXPENSES AFTER THE TIME OF SEPARATIN[G] AND THE DATE OF A DE FACTO DIVORCE." 3. "THE TRIAL COURT COMMITTED ERROR BY NOT DIVIDING AND ALLOCATING T[H]E MARITAL DEBT OF THE PARTIES." 4. "THE TRIAL COURT COMMITTED ERROR BY ORDERING S.T.R.S. PENSION BENEFITS OF THE PLAINTIFF ASSIGNED AS THE INTEREST OF THE DEFENDANT TO BE PAID AT MINIMAL MONTHLY PAYMENT AND NOT SECURED." 5. "THE TRIAL COURT COMMITTED ERROR IN MAKING AN UNEQUAL AND UNEQUITABLE DIVISION OF MARITAL PROPERTY RESULTING IN A DIVISION OF $296,663.02 TO THE WIFE AND $126,591.03 TO THE HUSBAND."
 {¶ 4} Our review of the trial court's division property is guided by the principles set out in Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 402: "A trial court has broad discretion in making divisions of property in domestic cases. A trial court's decision will be upheld absent an abuse of discretion. `Abuse of discretion' is more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary or unconscionable fashion. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." Moreover, a property division must only be equitable under R.C. 3105.171(C)(1), not equal. Cherry v. Cherry
(1981), 66 Ohio St.2d 348.
 {¶ 5} In this case, Craig does not dispute the valuations of the assets, but rather disagrees with the division of the assets as made by the trial court. Using the trial court and magistrate's valuations and the de facto date of divorce of November 1, 1997, we will examine the trial court's distribution of the assets.
 {¶ 6} The primary marital assets in this divorce are Diane's benefits in the State Teacher's Retirement System (STRS). As of November 1, 1997, Dianne's STRS benefits were valued at $204,407.55. Before this amount could be divided between the parties, it was reduced by the amount of social security that Diane would normally have earned because STRS beneficiaries are not eligible to receive social security benefits for employment for which they derive STRS benefits. SeeSchaefers v. Schaefers (Nov. 10, 1994), Columbiana App. No. 91-C-44;Helgeson v. Helgeson (Nov. 15, 2000), Logan App. No. 8-200-14.[1]
After giving Diane a $49,885.71 credit for social security and splitting the remaining STRS benefits in two, Diane's share of the STRS was $77,260.92 and Craig's share of the STRS was $77,260.92.
 {¶ 7} Next, several assets were divided between the parties the amounts of which were not disputed including an award of $1750.00 to each party for an account at Patronage Capital, the transfer of $750.00 worth of bonds to Craig with a $375.00 offset from Craig's STRS portion to Diane's STRS, $2,839.36 to each party from funds held in escrow by Drake, Philips, Kuenzli and Clark, the transfer of the marital residence with an existing equity worth $31,038 to Craig with an offset of $15,519 from Craig's portion of the STRS to Diane's STRS, $21,542 to Diane for personal property and finally, $13,584 to Craig for personal property. When considering these divisions, Diane's share of the marital property is now worth $119,286.28 and Craig's share is worth $111,328.28.
 {¶ 8} Next, Craig was assessed $19,834.76, as his half of the $39,669.51 which Diane spent on the maintenance and upkeep of the marital home between the parties' date of separation and the divorce hearing. This amount was offset from Craig's STRS portion to Diane's STRS. While Craig argues that this division amounts to the awarding of retroactive spousal support, we disagree. Until the divorce was final, these costs were used to maintain a marital asset which has served to benefit Craig as he now has the marital home. Consequently, we find that the trial court's offset of half of the maintenance costs to Craig was appropriate. Accordingly, after applying this figure, Diane's share of the marital property is now worth $139,121.04 and Craig's share is now worth $91,493.52.
 {¶ 9} Next, Craig argues that the parties' had credit card debt in the amount of $14,000 as of the date of the de facto divorce, but that the trial court did not divide this debt. The magistrate addressed Craig's debt in his report stating "Other than the mortgage referred to above, there are no joint debts of the parties. The Defendant does have a credit card in his own name with a balance of approximately $6,000." However, a review of the record reveals that there was no evidence introduced which would tend to prove that any of this debt was accumulated during the marriage, other than Craig's oral statement. Consequently, we do not find that the trial court was in err in making the determination that the credit card debt was non-marital.
 {¶ 10} Finally, Diane was to transfer the note issued by Bell Security into Craig's name and Diane was to get a credit for $15,813 from Craig's STRS portion to her STRS. When considering these additional funds, Diane's final share is worth $154,934.04 and Craig's share is worth $107,306.52.[2]
 {¶ 11} Craig argues that he is entitled to credit for half of the amount already paid to Diane on the note by Bell Security as he asserts that the loan was made with marital funds. However, the magistrate, as the trier of fact, found that while the payments on the loan were received after the date of separation, the funds were used to pay household expenses to generally balance out Craig's deficit spending associated with theft of the approximately $100,000. Consequently, we cannot find that the trial court abused its discretion in this regard.
 {¶ 12} While Craig also argues that he should receive his portion of Diane's STRS in one lump sum or, in the alternative, receive interest on his remaining portion of the STRS benefits because he is to be paid his amount from Diane's STRS on a monthly basis instead of as a lump sum, "[t]here is no requirement * * * that a trial court award interest on the payment of property division over time, that decision being left to the sound discretion of the trial judge." Zeefe v. Zeefe, (1998),125 Ohio App.3d 600. Furthermore, some Ohio courts have determined that a court has the option of determining present value of an STRS fund and allocating installment payments to a non-employee spouse. Smith v. Smith
(1993), 91 Ohio App.3d 248, 253. Craig also argues that his interest in Diane's STRS should be secured by life insurance. While Craig relies onNordhaus v. Nordhaus (Dec. 20, 1996), Putnam App. No. 12-96-10 to support his contention, Nordhuas has no bearing on this case. In Nordhaus, the trial court did not divide the pension at the time of the divorce as in the present case. Furthermore, in that case, an expert testified that the purchase of an insurance policy was the best way to secure the non-marital interest in the STRS and the trial court then ordered the purchase of insurance. Such was not the case here. There was no evidence presented by the pension expert to indicate that Craig's interest in the STRS should be secured and also the trial court did not order the purchase of insurance. Consequently, we cannot find that the trial court erred by failing to award Craig his interest in Diane's STRS in installment payments, failing to provide for interest, nor for failing to order Diane to procure life insurance to secure Craig's portion of the STRS
 {¶ 13} While Craig argues that the division of assets was inequitable, any reasons for unequal shares have been sufficiently explained above. Consequently, we cannot find that the trial court abused its discretion. Accordingly, assignments of error one through five are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
 HADLEY and WALTERS, JJ., concur.
[1] A person paying into an STRS program pays into that program in lieu of Social Security, and therefore, the trial court gave Dianne credit for the amount she would have received had she been paying into Social Security as Craig had his own social security benefits which were not included in the division in the amount of $30,525.71.
[2] There was some additional personal property, which the trial court ordered the respective owning party to keep, which is not figured into this calculation.