[Cite as *Triplett v. Feddersen*, 2014-Ohio-791.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JAMES TRIPLETT | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Defendant - Appellant and | : | Hon. John W. Wise, J. |
| Cross-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| BONITA FEDDERSEN | : | Case No. 2013CA00148 |
| | : | |
| | : | |
| Plaintiff- Appellee and | : | O P I N I O N |
| Cross-Appellant | | |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of Common Pleas, Case No. 2012-DR-00684


JUDGMENT:     Affirmed in part, Reversed and Remanded in part


DATE OF JUDGMENT:     March 3, 2014


APPEARANCES:

For Defendant-Appellant
Cross-Appellee

JEFFREY JAKMIDES
325 East Main Street
Alliance, OH 44601

For Plaintiff-Appellee
Cross-Appellant

MITCHELL MACHAN
3810 West Tuscarawas Street
Canton, OH 44708

*Baldwin, J.*

{¶1}    Defendant-appellant James Triplett appeals from the July 16, 2013 Final Entry Decree of Divorce issued by the Stark County Court of Common Pleas, Domestic Relations Division. Plaintiff-appellee Bonita Feddersen has filed a cross-appeal.

STATEMENT OF THE FACTS AND CASE

{¶2}    Appellant James Triplett and appellee Bonita Feddersen were married on July 1, 2011. No children were born as issue of such marriage.

{¶3}    On June 6, 2012, appellee filed a complaint for divorce against appellant. A trial commenced on June 5, 2013 and was continued on June 10, 2013. The following testimony was adduced at trial.

{¶4}    Appellant testified on cross-examination that he lived in his truck and did not have a home address. He testified that he had received Veteran's Administration benefits in the amount of $1,860.00 a month and that he had been receiving the same for ten years. In addition, appellant, who is a self-employed truck driver, received social security disability benefits in the amount of approximately $1,200.00 month before deductions. He stated that he had been receiving social security disability benefits for about two years. Appellant admitted at trial that he had not advised the social security administration that he was working.

{¶5}    Appellant testified that he became part of appellee's business, B & T Trucklines, in 2008, but testified that there was no documentation proving that he had an ownership interest in such business. According to appellant, appellant and appellee had an oral agreement.  On direct examination, appellant testified that he started the business with appellee.

{¶6}     Appellee testified on direct examination that appellant had never been in business with her and that he had his own business.    She further testified that he had "never been a part of my business, as any kind of owner. But he's helped me out." Transcript from June 5, 2013 at 35.  Appellee was self-employed by B & T and, in 2011, earned  $13,740.00. She had operated such business since December of 2003. While such business was incorporated, appellee allowed the corporate status to expire.

{¶7}     The trial court, in its Final Entry Decree of Divorce, found that both parties contributed to the operation of B & T Trucklines with both operating tractor trailer rigs and  providing trucks and trailers to independent contractors. The trial court further noted that appellee handled all of the business operations and that appellant drove a truck and assisted appellee in locating used trucks and trailers and purchasing the same.

{¶8}     After finding that all of the funds for the purchase of vehicles came from B & T Trucklines, the trial court found that of the vehicles titled in the name of B & T Trucklines, 13 were purchased prior to the parties' marriage. The trial court awarded appellee the same as separate property. The trial court further found that six (6)  other vehicles were purchased after the parties' marriage and found that the same were marital property. The trial court ordered that the six (6) vehicles be auctioned and that any auction proceeds be divided equally between the parties.

{¶9}    Appellant now raises the following assignment of error on appeal:

{¶10}  THE TRIAL COURT'S FINDING THAT VARIOUS VEHICLES CONSTITUTED SEPARATE MARITAL PROPERTY BELONGING TO THE WIFE WAS UNREASONABLE, ARBITRARY AND UNCONSCIONABLE GIVEN THE EVIDENCE

DEMONSTRATING THAT SAID VEHICLES WERE PURCHASED BY HUSBAND USING HIS OWN SEPARATE FUNDS AND WIFE'S ADMISSIONS THAT SHE HAD INTENTIONALLY MISLED THE COURT, THUS RENDERING HER TESTIMONY UNRELIABLE.

{¶11} Appellee has filed a cross-appeal, raising the following assignments of error:

{¶12} THE TRIAL COURT ERRED IN FAILING TO DETERMINE CERTAIN VEHICLES TO BE THE SEPARATE PROPERTY OF PLAINTIFF-APPELLEE BONITA L. FEDDERSEN.

{¶13} THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO RECOGNIZE AND DIVIDE A SUBSTANTIAL MARITAL ASSET.

I

{¶14} Appellant, in his sole assignment of error, argues that the trial court erred in finding that various specified vehicles constituted separate property belonging to appellee.

{¶15} We review a trial court's classification of property as marital or separate under a manifest weight of the evidence standard and will affirm if the classification is supported by some competent, credible evidence. *Taub v. Taub,* 10th Dist. No. 08AP750, 2009–Ohio–2762, ¶ 15. Marital property is defined as "all real and personal property that is currently owned by either or both of the spouses ... that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). However, marital property does not include any separate property. Separate property is defined in R.C. 3105.171(A)(6)(a) in relevant part, as  meaning "all real and personal property and

any interest in real or personal property that is found by the court to be any of the following: * * * (ii) Any real or personal property or interest in real estate or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii). A party to a divorce action seeking to establish an asset or portion of an asset is separate property, rather than marital property, has the burden of proof generally by a preponderance of the evidence. *Zeefe v. Zeefe,* 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (8th Dist.1998).

{¶16} As is stated above, the trial court found that of the vehicles titled in the name of B & T Trucklines, 13 were purchased prior to the parties' marriage and awarded appellee the same as separate property. Appellant now argues that the trial court erred in doing so because there was testimony that appellant had purchased the vehicles using his own funds prior to the marriage and because appellee lacked credibility.

{¶17} At the trial in this matter, appellee testified that appellant had a 2004 Freightliner and a 1999 East (trailer) that he purchased on his own and that were in appellant's name. She testified that the same belonged to appellant. There is no 2004 Freightliner mentioned in the trial court's Judgment Entry. We concur with appellant that the trial court erred in awarding the 1997 East (trailer) to appellee as her separate property based on the testimony.

{¶18} Appellant also notes that, at the trial, Steve Harbert testified that he sold a 1993 Freightliner to appellant who paid cash and that he did not sell the same to appellee. Harbert further testified that appellant paid him $10,000.00 in cash for a 1994

Raven Flatbed, $10,000.00 for a 1997 Peterbuilt and $6,500.00 in cash for a 1997 Benson Flatbed.

{¶19} The 1993 Freightliner and the Raven Flatbed are not mentioned in the trial court's property distribution exhibit. Moreover, on cross-examination, Harbert testified that he had no idea where appellant got the money to purchase the same.   While appellee disputed that appellant used his own funds to purchase the vehicles, appellant argues that appellee was not credible. Appellant notes that appellee admitted that she did not pay $1,740.00 to Dave Ferrell for license fees although the trial court ordered that she had ninety days to do so in November of 2012 and that appellee admitted lying to the Judge about the location of a BMW. However, appellant, who testified that he knew that he was possibly committing a federal crime by failing to report circumstances that would affect his right to receive social security disability, had his own credibility issues. Moreover, appellant lacked documentation proving that he had an ownership interest in B & T Trucklines. The trial court, as trier of fact, was in the best position to assess credibility and clearly found appellee more credible.

{¶20} Appellant's sole assignment of error is, therefore, sustained in part and overruled in part.

CROSS-APPEAL

{¶21} Appellee, in her first assignment of error, argues that the trial court erred in determining that six (6) vehicles were purchased after the parties' marriage and were martial property. Appellee specifically contends that the trial court should have found that a 1995 Reitnouer trailer, a 2000 Kenworth, a 1998 Benson trailer and a 1999 Freightliner with a serial number ending with 1774 were her separate property.

{¶22}   The Certificate of Title for the 1995 Reitnouer  trailer, which was admitted as an exhibit, indicates that the title to the same did not transfer until July 29, 2011, which was after the parties' marriage, Contrary to appellee's assertion, it is not clear that she purchased and paid for this vehicle "well before the date of the marriage."

{¶23}   As for the 2000 Kenworth, the Ohio Certificate of Title indicates that title to such vehicle transferred in December of 2011, which was after the marriage. Likewise, the Certificate of Title to the 1999 Freightliner (Serial # ending in 1774) states that title transferred to such vehicle in February of 2012. On such basis, we find that the trial court did not err in not awarding these vehicles to appellee as her separate property.

{¶24}   The  Certificate of Title to the 1998 Benson, which was an exhibit, was issued on May 10, 2011, which was before the parties' marriage. We find, therefore, that the trial court erred in not awarding the same to appellee as her separate property.

{¶25}   Appellee's first assignment of error is, therefore, sustained in part and overruled in part,

II

{¶26}   In her second assignment of error, appellee maintains that the trial court erred in failing to recognize and divide a substantial marital asset. Appellee specifically argues that the trial court erred in failing to divide $18,000.00 which had been placed on a "comp data" card for use in B & T Trucklines' business transactions.

{¶27}   At the trial, Richard Cosgrove, a truck driver for Doggone Trucking, testified that he entered into a business relationship with the parties in this case. He testified that appellee "wrote out" that they could give appellant $18,000.00 on a credit card for four vehicles. Transcript from June 10, 2013 at 4. He further testified that

appellee authorized them to put the $18,000.00 on the Com data card to pay appellant for the work that the trucks did. The following is an excerpt from his testimony:

{¶28}   Q:      Alright, I'm just, I guess we're just trying to understand this.  We don't, none of us are involved in the trucking business.  The Judge, me…the other lawyer, so, explain how this works?

{¶29}   A:      The trucks go out and haul the freight.  And what they, the revenue that they make a week belongs to the truck, belongs to the trucks that run the freight.

{¶30}   Q:      Okay.

{¶31}   A:      And we pay the trucks that run freight on a Com data card.

{¶32}   Q:      Okay.

{¶33}   A:      And the Com data card was authorized that Jamie could use it.

{¶34}   Q:      Alright.  And who authorized that?

{¶35}   A:      Bonita.

{¶36}   Q:      And so, Bonita authorized the payment to Mr. Triplett of the revenue that those trucks earned?

{¶37}   A:      Yes.

{¶38}   Q.      And double F, the exhibit you have before you, specifies the four vehicles that we're talking about here?

{¶39}   A:      Yes.

{¶40}   Q:      So, this agreement was uh…provided to you by Bonita Fedderson?

{¶41}   A:      Yes.

{¶42} Q:     And in con, in keeping with that agreement, you provided Mr. uh…Triplett with eighteen thousand dollars that was earned as result of the work done by these trucks?

{¶43} A:     Yes.

{¶44} Q:     That he operated?

{¶45} A:     Yes.

{¶46} Q:     Okay.  Did Bonita Fedderson ever uh…complain to you and say that he should not have got this money, that this was somehow uh…a theft from her company?

{¶47} A:     No.

{¶48} Q:     And this was all the understanding and there was nothing, no controversy about this whatsoever. Was there?

{¶49} A:     No

{¶50} Transcript from June 10, 2013 at 5-7.

{¶51} As noted by appellant, the testimony indicated that the $18,000.00 was spent as part of B & T's ongoing business operations. We find, therefore, that the trial court did not err in not dividing the $18,000.00

{¶52} Appellee's second assignment of error on cross-appeal is, therefore, overruled.

{¶53}   Accordingly, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings consistent with this Opinion.

By: Baldwin, J.

Gwin, P.J. and

Wise, J. concur.