[Cite as *Condrin v. Condrin*, 2023-Ohio-4382.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| CYNTHIA M. CONDRIN | : | JUDGES: | |
| | : | Hon. W. Scott Gwin, P.J. | |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. | |
| | : | Hon. Andrew J. King, J. | |
| -vs- | : | | |
| | : | | |
| CARL W. CONDRIN | : | Case No. 2023 CA 0039 | |
| | : | | |
| Defendant-Appellee | : | O P I N I O N | |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Domestic Relations Division,
                                  Case No. 2021 DR 01070


JUDGMENT:                         Reversed and Remanded


DATE OF JUDGMENT:                 December 4, 2023


APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

KELLY M. WICK                           ALEX PALOMBA
400 South Fifth Street                  503 South Front Street
Suite 200                               Suite 203
Columbus, OH  43215                     Columbus, OH  43215

*King, J.*

{¶ 1}   Plaintiff-Appellant, Cynthia M. Condrin ("wife"), appeals the April 6, 2023 Judgment Entry - Decree of Divorce entered by the Court of Common Pleas of Licking County, Ohio, Domestic Relations Division, contesting the division of property. Defendant-Appellee, Carl W. Condrin ("husband"), filed a cross-appeal.  We reverse the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   The parties were married on February 15, 1997.  They have one child born in June 2006.  On December 3, 2021, wife filed a complaint for divorce.  Hearings were held on February 13, and April 1, 2023.  By judgment entry - decree of divorce filed April 6, 2023, the trial court granted the parties a divorce, and pertinent to this appeal, divided their marital and separate property.   Specifically, the trial court deemed husband's MoneyBlock IRA to be his separate property, and some stocks to be husband's separate property and some stocks to be marital property.

{¶ 3}   Wife filed an appeal with the following assignments of error:

I

{¶ 4}   "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING WIFE SURRENDERED HER RIGHTS TO THE MONEYBLOCK IRA AND THAT IT IS HUSBAND'S SEPARATE PROPERTY IN CONTRAVENTION TO ORC §3103.06."

II

{¶ 5}   "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING WIFE SURRENDERED HER RIGHTS TO THE MONEYBLOCK IRA AND THAT IT WAS HUSBAND'S SEPARATE PROPERTY BASED ON CONTRACT LAW."

III

{¶ 6}   "THE TRIAL COURT ERRED IN FINDING HUSBAND MET HIS BURDEN OF PROVING SEPARATE PROPERTY IN THE IRA."

IV

{¶ 7}   "THE TRIAL COURT ERRED IN FINDING AND ORDERING A DIVISION OF A SEPARATE PROPERTY INTEREST IN THE EQUITABLE ANNUITY."

V

{¶ 8}   "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND STOCKS TO BE SEPARATE PROPERTY."

VI

{¶ 9}   "THE JUDGE ERRED IN FAILING TO AWARD WIFE 50% OF THE STOCK AS A DISTRIBUTIVE AWARD."

{¶ 10} Husband filed a cross-appeal with the following cross-assignment of error:

CROSS-ASSIGNMENT OF ERROR I

{¶ 11} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PROMULGATED ITS APRIL 6, 2023, DECISION BECAUSE IT FAILED TO TAKE JUDICIAL NOTICE OF COMPANY MERGERS THAT WERE READILY VERIFIABLE AND CRUCIAL TO THE CASE.  THIS OVERSIGHT LED TO A MISCONSTRUED VIEW OF THE STOCK'S STATUS AS MARITAL PROPERTY.  THE TRIAL COURT ERRED IN ITS ASSESSMENT OF MARITAL ASSETS BY NOT CONSIDERING THE 2016 SPLIT BETWEEN YUM AND YUM CHINA, AND THE 2022 SPIN-OFF OF AT&T'S INTEREST

IN WARNERMEDIA TO AT&T'S SHAREHOLDERS, IMPERMISSIBLY INFLATING THE VALUE OF THE ASSETS SUBJECT TO DIVISION."

I, II, III

{¶ 12} In her first three assignments of error, wife claims the trial court erred in declaring a MoneyBlock IRA to be husband's separate property.  We agree.

{¶ 13} Under R.C. 3105.171(B), in divorce proceedings, a trial court shall "determine what constitutes marital property and what constitutes separate property." The trial court "shall divide the marital and separate property equitably between the spouses, in accordance with this section."  *Id.*  R.C. 3105.171(A)(6)(a)(ii) defines "separate property" as, "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."  The party to a divorce action claiming separate property has the burden of proof by a preponderance of evidence.  *Zeefe v. Zeefe,* 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (1998). "Preponderance of the evidence" means "evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it."  *Black's Law Dictionary* 1182 (6th Ed.1998).  The characterization of property as separate or marital is a mixed question of law and fact, and the characterization must be supported by sufficient, credible evidence.  *Chase-Carey v. Carey,* 5th Dist. Coshocton No. 99CA1, 1999 WL 770172 (Aug. 26, 1999).

{¶ 14} The parties agreed the IRA was accumulated during the marriage and had a value of $291,318.32 as of December 31, 2022.  T. at 197-199, 268, 292.  Fifteen years into the marriage, husband sought to name their child as the beneficiary on the account

in order to ensure the child "would have something * * * later in life." T. at 334. Husband did not want the monies in the IRA account to "disappear" because wife "had moved out one other time. I came home from work and everything was gone." T. at 333-334. He was concerned wife "would throw it all away or spend it all." T. at 333. On December 28, 2012, wife signed a Roll-Over IRA Simplifier. Defendant's Exhibit L. This document was signed by the parties over fifteen years after the marriage and ten years prior to the divorce hearing. The second page of Exhibit L is an undated IRA Designation of Beneficiary form listing the child as the beneficiary on the account, also signed by wife. Each page required spousal consent and contained the following language:

> I am the spouse of the above-named IRA holder. I acknowledge that I have received a fair and reasonable disclosure of my spouse's property and financial obligations. Due to the important tax consequences of giving up my interest in the IRA, I have been advised to see a tax professional.
> I hereby give the IRA holder any interest I have in the funds or property deposited in the IRA and consent to the beneficiary designation(s) indicated above. I assume full responsibility for any adverse consequences that may result. No tax or legal advice was given to me by the Trustee.

{¶ 15} Wife testified first. She stated when she signed the document, she believed she was surrendering her right to be a beneficiary if husband passed away so their minor child would be entitled to the asset; she did not intend to surrender her marital rights to the IRA in the event of a divorce. T. at 268, 290-293, 297. Husband believed wife waived

her right to the IRA account and it became his separate property. T. at 334, 337. But when asked on direct what should be done with the IRA account, husband stated, "we could try to come up with something maybe go - - divide it three ways" between the child, wife, and himself. T. at 333. If the account held $300,000, "that everybody gets a hundred K." T. at 334-335. Husband did not present any evidence as to the legal meaning of the quoted language in Exhibit L.

{¶ 16} In its April 6, 2023 judgment entry, the trial court determined wife surrendered her rights to the IRA account when she signed Exhibit L, citing the document's spousal consent language above. The trial court found the language "appears to be clear and unambiguous" and indicates wife surrendered "all rights" to the IRA account. April 6, 2023 Judgment Entry - Decree of Divorce at 45. While the trial court sympathized with wife's argument on what she believed she was doing, "to only be surrendering rights in the event of the Defendant's death," the trial court determined it could not "ignore the clear language of the contract and set it aside by the parole evidence" of wife. *Id.* The trial court found wife surrendered her rights to the IRA and the account was husband's separate property.

{¶ 17} Wife now argues the trial court's decision was incorrect 1) as a matter of law because it was prohibited under R.C. 3103.06(A); and 2) as an abuse of discretion under contract law.

{¶ 18} Prior to March 23, 2023, R.C. 3103.06(A) stated the following: "A husband and wife cannot, by any contract with each other, alter their legal relations, except that they may agree to an immediate separation and make provisions for the support of either of them and their children during the separation." Effective March 23, 2023, the statute

was amended to permit married couples to enter into postnuptial agreements that alter their legal relations with each other.

{¶ 19} The trial court's judgment entry is silent on the effect of R.C. 3103.06(A); presumably because wife did not bring the statute to the trial court's attention and present argument on its application to the matter. Wife did not do so because after testifying on direct of her intent to give up her rights to husband's IRA account "[o]nly if he died," the trial court stated the following during her cross-examination (T. at 292-293):

Here's what I will say though. It [Exhibit L] does look like this is saying she's giving up her interest in that account. So I don't know whether or not that's what she's doing or not. But what's going to wind up happening is QDRO Consultants will have to look at that. So someone will have to make sure QDRO Consultants is aware because they're going to have dealt with that before and see whether or not that is just simply a beneficiary or it almost looks like that includes some language saying you're giving up your right to any interest to this account. But let them look at it because they're going to be used to seeing it. Thank you. Please proceed.

{¶ 20} The trial court first stated it would have QDRO Consultants determine the effect of the disputed language in the change of beneficiary exhibit, then in its judgment entry, ruled that wife surrendered all her rights to the IRA. The trial court did not request or entertain any further evidence or argument on the matter after the first hearing. Even though wife was aware during the second hearing two months later that the IRA account

was "still in dispute," it would be reasonable to assume it was still in dispute awaiting review by QDRO Consultants.  T. at 415.  There was no reason for wife to argue R.C. 3103.06 or contract law to the trial court.  The testimony and evidence on Exhibit L were meager and involved a significant asset worth close to $300,000 accumulated over the course of the marriage.

{¶ 21} Upon review, we reverse the trial court's decision and remand the matter to the trial court to consider the language in Exhibit L vis-à-vis R.C. 3103.06 and contract law.  On remand, the trial court may determine if some, all, or none of the account is a martial asset.

{¶ 22} Assignments of Error I, II, and III are granted.

{¶ 23} Because the trial court's decision on the IRA account is reversed and remanded to the trial court for further consideration, we decline to review the remaining assignments of error in the event the trial court determines that at least some of the IRA account is a martial asset and desires to make any further equitable changes.

{¶ 24} Assignments of Error IV, V, and VI and Cross-Assignment of Error I are premature in light of this court's decision and will not be considered.

{¶ 25} The judgment of the Court of Common Pleas of Licking County, Ohio, Domestic Relations Division, is hereby reversed and the matter is remanded for further consideration.

By King, J.

Gwin, P.J. and

Delaney, J. concur.