OPINION.
This is an appeal by defendant-appellant Donald R. Ayer from a divorce decree. Mr. Ayer and plaintiff-appellee Grace L. Ayer were married in 1961. They separated in May 1993, with Mr. Ayer moving out of the home. In July 1993, Ms. Ayer filed a complaint for divorce.
Mr. Ayer asserts seven assignments of error. In our review, we apply an abuse-of-discretion standard.[1] An abuse of discretion exists where "no sound reasoning process" would support the trial court's decision.[2] When applying this standard of review, appellate courts may not freely substitute their judgment for that of the trial court.[3] Every reasonable presumption must be made in favor of the trial court's findings of fact because the trial court is in the best position to determine the credibility of the evidence.[4] Applying these guidelines, we now turn to Mr. Ayer's assignments.
I. Duration of Marriage
In his first assignment, Mr. Ayer challenges the trial court's determination that the duration of the parties' marriage was from 1961 to August 14, 1998, the date of the first property hearing in the matter. Mr. Ayer argues that the marriage should have been considered to have been terminated in either May 1993, when the parties separated, or June 1993, when the divorce complaint was filed. Mr. Ayer claims that the value of various businesses operated by him without the assistance of Ms. Ayer increased in value by about $858,354 from 1993 to 1998. He asserts that it would be inequitable for Ms. Ayer to share in the appreciated value.
Marital property to be divided between parties in a divorce includes property acquired "during the marriage."[5] The phrase "during the marriage" is statutorily presumed to include the date of the marriage through the date of the final divorce hearing.[6] But if the trial court determines that the use of these dates would be inequitable, it may consider other dates.[7] Here, while it is true that the parties separated in 1993, they continued to be financially intertwined in several respects. The record reveals that both Mr. and Ms. Ayer participated in, among other things, the sale of marital property and litigation involving various marital properties. Under these circumstances, we cannot conclude that the court erred in determining that the marriage terminated in 1998. We overrule the first assignment.
In the seventh assignment, Mr. Ayer asserts that, even if we overrule the first assignment, it would still be inequitable for Ms. Ayer to receive a portion of the increased value of the businesses. But, in light of our conclusion above that the court did not err in determining that the duration of the marriage was from 1961 to 1998, and in light of the principle that "[e]ach spouse shall be considered to have contributed equally to the production and acquisition of marital property,"[8] we overrule the seventh assignment. Based on our review of the record, we find no abuse of discretion in the court's division of the property.
II. Property Valuation
In the second assignment, Mr. Ayer challenges the court's valuation of various properties included in the property division. We find no merit in any of the challenges.
A. 3434 Duck Creek
The first valuation challenged by Mr. Ayer was for a property known as 3434 Duck Creek. During the divorce process, 3434 Duck Creek was titled in Ms. Ayer's name and was being rented to one of Mr. Ayer's businesses, Ayer Electric, Inc., under a long-term lease. Based on an appraiser's valuation, the court found that 3434 Duck Creek had a fair market value of $200,000. The court awarded both 3434 Duck Creek and Ayer Electric to Mr. Ayer.
Mr. Ayer argues that $200,000 was too high. He claims that Ayer Electric's lease, which the court found was very favorable to Ayer Electric, decreased the value of 3434 Duck Creek. He claims that the appraiser did not properly consider the lease and that, if the lease had been properly considered, the value of 3434 Duck Creek would have been reduced.
We reject Mr. Ayer's argument because, in light of the award of both 3434 Duck Creek and Ayer Electric to Mr. Ayer, a consideration of the lease was not necessary. The court's award made Mr. Ayer both the lessor and the lessee. In other words, he was given control of the lease. Because he was given control, the lease did not cause a discount in the value of 3434 Duck Creek. We conclude that the court did not err in valuing the property at $200,000.
B. AT Partnership
The second valuation challenged by Mr. Ayer was for an interest in a partnership, AT Partnership, that the court awarded to Ms. Ayer. AT owned two pieces of real estate. Based on the testimony of an appraiser, the court found that the first, known as Hillcrest Towers, was worth $3,125,000, and that the second, known as the Lykins Property, was worth $575,000. Before the property hearing, Mr. Ayer had owned a 5/6 interest in AT. Mr. Ayer had been involved in various disputes with Irvin Tessler, the owner of the 1/6 interest.[9] Tessler and Ms. Ayer had agreed to accept each other as partners if the court so ordered. The court awarded the 5/6 interest to Ms. Ayer, giving that interest a value of $2,229,609. The court calculated this amount by adding the values of Hillcrest Towers and the Lykins Property, and subtracting from that amount a mortgage on the Lykins Property and various liabilities that the partnership had to other companies. The court then calculated 5/6 of that amount to be $2,229,609.
Mr. Ayer argues that the court failed to look at the partnership agreement between himself and Tessler when the court calculated the value of the partnership interest. According to Mr. Ayer, under the agreement's provisions for calculating the value of the partnership, the value of the 5/6 interest would have been about a million dollars higher than the amount determined by the court.
To begin, we note that Ms. Ayer claims that we should not even address this argument because Mr. Ayer did not properly raise it in the trial court.[10] We disagree. Based on our review of the record, we conclude that Mr. Ayer sufficiently raised the argument below.
Regardless, we reject the argument on the merits. We have reviewed the partnership agreement and have found no provision that would have obligated the court to value the partnership in the way that Mr. Ayer desires. We hold that the court did not abuse its discretion in its valuation.
C. Ayer Electric
The third valuation challenged by Mr. Ayer was for Ayer Electric, which the court valued at $1,266,465. The claim involves the accounting method that was used to compute the value of the business. Mr. Ayer argues that the court inappropriately based its determination on what is known as the "percentage of completed contract" method of accounting. According to Mr. Ayer, the court should have used what is known as the "completed contract method" of accounting. In the completed-contract method, income is reported when a particular job is completed. In the percentage-of-completed-contract method, an estimate is made at a given point in a project as to how much of the job has been completed, and income is reported based on that estimate. Mr. Ayer claims that it was Ayer Electric's practice to use the completed-contract method and, accordingly, that the court should have used the method also. According to Mr. Ayer, the percentage-of-completed-contract method was inappropriate because it was based on speculative estimates, or "guesses" as he calls them. Mr. Ayer contends that the court's inappropriate use of the percentage-of-completed-contract method resulted in an overvaluation of Ayer Electric by about $256,000.
We reject Mr. Ayer's argument. Contrary to Mr. Ayer's condemnation of the percentage-of-completed-contract method as mere "guessing," the record reveals that it is an accepted, recognized accounting method. In fact, although the record shows that Ayer Electric used the completed-contract method for tax purposes, the record also shows that the company used the percentage-of-completed-contract method when it submitted financial statements for purposes of obtaining bonding. Under these circumstances, we cannot conclude that the court erred in its valuation based on the percentage-of-completed-contract method.[11]
Also, we note that Mr. Ayer makes an argument about a plane owned by Ayer Electric that was included in the court's valuation of the company. Mr. Ayer claims that the court failed, when valuing the plane, to consider the tax ramifications resulting from the full depreciation of the plane on Ayer Electric's books. We reject this argument. The court based its valuation of the plane on an amount given by an appraiser. The court did not abuse its discretion in not considering the tax ramifications argued by Mr. Ayer.
D. Loan to Verne Inc.
The fourth valuation challenged by Mr. Ayer involved $136,497 that Ayer Electric loaned to another business, Verne Inc. Mr. Ayer claims that he was improperly charged twice for this loan: once when the court included the value of the loan in its valuation of Ayer Electric, and again when the court charged the loan to him personally. Mr. Ayer refers to this as an improper "double dip."
But, under Civ.R. 53(E)(3)(b), we do not address Mr. Ayer's argument. Civ.R. 53(E)(3)(b) states that objections to magistrates' decisions "shall be specific and state with particularity the grounds of objection." The rule further provides, "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Here, Ms. Ayer points out that, when Mr. Ayer objected to the magistrate's decision, he never raised the double-dip argument. Mr. Ayer responds that the argument was "indirectly addressed by questioning the valuation of Ayer Electric." We reject Mr. Ayer's position because, under Civ.R. 53(E)(3)(b), objections must be more than "indirectly addressed": they must be specific. While Mr. Ayer did object to the valuation of Ayer Electric — an objection that we have already addressed — he did not assert his double-dip argument. Because the double-dip argument was not specifically addressed below, and not even mentioned, we do not address it now on appeal.
E. U-Store U-Lock
The fifth valuation challenged by Mr. Ayer involved a business awarded to him, U-Store U-Lock. During the divorce process, Mr. Ayer and his son disputed ownership of the business. Litigation followed, and the court determined that Mr. Ayer owned the entire business.[12] Mr. Ayer now claims that Ms. Ayer should bear the cost of the attorney fees, about $195,000, that he expended during the litigation. Mr. Ayer's claim stems from the fact that Ms. Ayer testified during the litigation that she believed that the son owned a half interest in the business. Mr. Ayer argues that either the court's valuation of the business should be reduced by the amount of the attorney fees or that Ms. Ayer should be charged with financial fault in the amount of the fees.
In essence, Mr. Ayer argues that, because Ms. Ayer testified favorably for her son, she should have been divested of her marital interest in U-Store U-Lock. We can find no rule that would compel such a result. The magistrate explained, "A judgment was entered of record whereby [Mr. Ayer] was determined to be the owner of U-Store U-Lock. [Ms. Ayer] was required to testify in this litigation and did so. Her testimony was truthful and benign. Wife's testimony does not divest her of her marital interest in U-Store U-Lock. As to the payment of attorney fees, the evidence supports a finding that said fees were paid from marital funds and therefore no offset or credit should be given to [Mr. Ayer]." We find no fault in the court's reasoning. As the court properly concluded, no offset or credit needed to be given to Mr. Ayer.
Because we reject each of Mr. Ayer's arguments regarding the valuations of the different properties, the second assignment is overruled.
III. Financial Disentanglement of the Parties
The third assignment involves the principle that trial courts, when circumstances permit, "should strive to resolve the issues between the parties so as to disassociate the parties from one another or at least minimize their economic partnership."[13]
The assignment involves the court's awarding of Ayer Electric to Mr. Ayer and the awarding of the 5/6 interest in AT Partnership to Ms. Ayer. Mr. Ayer claims that the court should have ordered AT to pay a $677,459 debt that it owed to Ayer Electric. Mr. Ayer asserts that, by not requiring payment of the debt, the court left the parties entangled and subject to further collection litigation.
Mr. Ayer's argument assumes that AT will not honor its payment obligations. The trial court concluded that it was reasonable to assume that AT would honor its accounts payable. We cannot conclude that the court erred in that determination. Further, we conclude that the court would not have had the jurisdiction to order AT to pay debts to Ayer Electric even if it had wanted to do so. AT and Ayer Electric are separate entities from Mr. Ayer and Ms. Ayer. Because neither AT nor Ayer Electric was a party to this divorce, the court was without jurisdiction to issue the order. We overrule the third assignment.
IV. Growth of Assets
The fourth assignment involves two assets in the property division. One asset was a profit-sharing plan valued at $1,135,954 that the court awarded to Ms. Ayer. The other was the proceeds from the sale of a building, Vine Tower, that had been held in escrow. The court awarded $1,220,591 of those proceeds to Mr. Ayer and $94,213 of the proceeds to Ms. Ayer. The court divided the interest growth on the proceeds equally between Mr. Ayer and Ms. Ayer. In this assignment, Mr. Ayer asserts that the court did not consistently treat the growth of the profit-sharing plan and the growth of the Vine Tower proceeds. Mr. Ayer claims that it was inequitable to allow Ms. Ayer to retain all the growth in the profit-sharing plan, while dividing equally the interest growth on the Vine Tower proceeds.
We conclude that we should not address this argument. The civil rules state, "Within fourteen days of the filing of a magistrate's decision, a party may file written objections to the magistrate's decision. If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed."[14] The first time that Mr. Ayer raised the argument in this assignment was over six months after the magistrate had issued a decision. Because Mr. Ayer did not raise the argument in a timely objection, we hold that the argument should not be addressed on appeal.
Regardless, even if we were to address the argument, we would find no error in the court's judgment. Considering the court's property division as a whole, we conclude that the award of the entire profit-sharing plan to Ms. Ayer was equitable. There was no abuse of discretion in awarding Ms. Ayer all the growth in the profit-sharing plan. The fourth assignment is overruled.
V. Financial Misconduct
The fifth assignment involves allegations of financial misconduct on the part of Ms. Ayer. The court charged Ms. Ayer $66,000 for financial misconduct in connection with her taking silver and money from a safe in the marital residence. Mr. Ayer points to other instances of alleged misconduct on Ms. Ayer's part, such as Ms. Ayer unilaterally forgiving rents and giving gifts to her children. Mr. Ayer argues that Ms. Ayer should also have been charged for this alleged misconduct.[15]
The court reviewed the evidence and concluded that the instances cited by Mr. Ayer did not rise to the level of financial misconduct. Based on our review of the record, we cannot conclude that the court abused its discretion in making that determination. We note that the record reveals that, during the course of the divorce, both Mr. Ayer and Ms. Ayer received money from the marital estate for their own uses. For neither Mr. Ayer nor Ms. Ayer did the court determine that every instance of personal use rose to the level of financial misconduct. The fifth assignment is overruled.
VI. Attorney Fees
In the sixth assignment, Mr. Ayer challenges what he asserts was an improper award of attorney fees to Ms. Ayer. The court found that Ms. Ayer had spent $30,000 from marital funds and that Mr. Ayer had spent $131,251.75 from marital funds for legal services rendered in connection with the divorce. The court added $30,000 and $131,251.75, for a total of $161,251.75 in legal fees expended by both parties from the marital assets. The court then divided $161,251 by two, for a total of $80,625.87. It concluded that Ms. Ayer should receive from Mr. Ayer's share in the marital estate the difference between the $30,000 that she had actually paid and $80,625.87, for a total of $50,625.87.
In light of the court's finding that Mr. Ayer spent substantially more than Ms. Ayer from marital funds for legal services rendered in connection with the divorce, we conclude that the court's determination was an equitable way of compensating Ms. Ayer. (If no funds had been expended for legal fees, the $161,251.75 could have been divided equally, with each party receiving an additional $80,625.87 from the marital estate.) This was not an award of attorney fees in the traditional sense of the term, but was rather, as the trial court stated, an "evening distribution" of marital property expended on legal fees. We conclude that there was no abuse of discretion in such a distribution. We note that, in Gill v. Gill, this court stated that, before a court can award attorney fees to one of the parties to a divorce, the court is required to determine "whether either party will be prevented from fully litigating his rights and adequately protecting his interest if it does not award reasonable attorney fees."[16] Here, the court did not make that determination. But, under the circumstances of this case — where there was merely an "evening distribution" — we conclude that the rule in Gill does not apply. We overrule the sixth assignment.
Therefore, the judgment of the trial court is affirmed.
__________________________ Painter, Judge
Hildebrandt, P.J., and Winkler, J., concur.
[1] See Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028, 1030.
[2] AAAA Ents., Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161,533 N.E.2d 597, 601; State v. Echols (1998), 128 Ohio App.3d 677, 700,716 N.E.2d 728, 744.
[3] See In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138,566 N.E.2d 1181, 1184.
[4] See Gulker v. Gulker (Aug. 6, 1996), Scioto App. No. 95CA2377, unreported.
[5] See R.C. 3105.171(A)(3).
[6] See R.C. 3105.171(A)(2)(a).
[7] See R.C. 3105.171(A)(2)(b).
[8] R.C. 3105.171(C)(2).
[9] See Tessler v. Ayer (1995), 108 Ohio App.3d 47,669 N.E.2d 891; Tessler v. Ayer (Oct. 25, 1995), Hamilton App. Nos. C-940574, C-940632 and C-940780, unreported; Tessler v. Ayer
(May 18, 1994), Hamilton App. Nos. C-930133 and C-930314, unreported.
[10] See Civ.R. 53(E)(3)(b).
[11] See Zeefe v. Zeefe (1998), 125 Ohio App.3d 600, 612,709 N.E.2d 208, 216 ("When determining the value of a marital asset, a domestic relations court is not required to use a particular valuation method.").
[12] See Ayer v. Ayer (Feb. 20, 1997), Hamilton App. Nos. C-940762 and C-940764, unreported.
[13] Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 182,559 N.E.2d 1292, 1297.
[14] Civ.R. 53(E)(3)(a).
[15] See R.C. 3105.171(E)(3).
[16] (Oct. 10, 1997), Hamilton App. No. C-960610, unreported (citing R.C. 3105.18[H]).