OPINION
{¶ 1} Appellant/cross-appellee, Luke A. Hueber ("appellant"), appeals from a divorce decree issued by the Clermont County Court of Common Pleas, Domestic Relations Division, granting a divorce to him and appellee/cross-appellant, Stephanie K. Hueber ("appellee"), who cross-appeals from that same decree.
 {¶ 2} The parties were married in November 1989. In December 2001, appellee filed in the Clermont County Domestic Relations Court a petition to dissolve the parties' marriage. In February 2002, appellee successfully moved to have the dissolution petition converted into a complaint for divorce. Appellant filed an answer and counterclaim in response. In July 2003, the trial court held a hearing on the parties' claims. In September 2003, the trial court issued a decision, granting the parties a divorce on incompatibility grounds, adopting the parties' shared parenting plan, issuing child and spousal support orders, and dividing the parties' marital assets. The trial court found that the de facto termination date of the parties' marriage was January 1, 2002.
 {¶ 3} Appellant moved to have the trial court clarify or reconsider its decision with respect to child and spousal support and certain property division issues, and to re-open the case to allow him to present additional evidence to conform to the trial court's finding regarding the marriage's termination date. On November 17, 2003, the trial court issued a decision, finding that its previous decision contained clerical errors regarding child and spousal support, which it corrected pursuant to Civ.R. 60(A). The trial court overruled appellant's motions in all other respects. On December 2, 2003, the trial court issued a divorce decree, adopting the terms of its prior decisions.
 {¶ 4} Appellant appeals from the divorce decree, raising the following as error:
 {¶ 5} Appellant's Assignment of Error No. 1:
 {¶ 6} "The trial court erred in deciding that the american general retirement account was a marital asset."
 {¶ 7} Appellant argues that the trial court erred by classifying the American General retirement account as marital property because he demonstrated by a preponderance of the evidence that it was his separate property. We disagree with this argument.
 {¶ 8} In divorce proceedings, the trial court must determine what constitutes marital property and what constitutes separate property, and upon doing so, divide the property in accordance with the provisions in R.C. 3105.171. R.C. 3105.171(B). "Marital property" includes any interest that either spouse currently has in any real or personal property, including retirement benefits, acquired by him or her during the marriage. R.C.3105.171(A)(3)(a)(ii). Marital property does not include the "separate property" of either spouse. R.C. 3105.171(A)(3)(b). "Separate property" includes any real or personal property or interest therein acquired by a spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). With certain exceptions, marital property must be divided equally (unless it would be inequitable to do so, in which case, it must be divided equitably rather than equally), R.C. 3105.171(C), while separate property must be disbursed to the spouse who owns it. R.C. 3105.171(D).
 {¶ 9} A party seeking to have a particular asset classified as his or her separate property has the burden of proving that fact by a preponderance of the evidence. Peck v. Peck (1994),96 Ohio App.3d 731, 734. A "preponderance of the evidence" is "the greater weight of the evidence, not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." Black's Law Dictionary (8th Ed. 2004) 1220. A party who claims that an asset is premarital must demonstrate that the property existed prior to the marriage and that the property can be traced to that time. Guenther v. Guenther (Oct. 19, 1994), Wayne App. No. 2927. A trial court's decision as to whether an asset is traceable to premarital property is a factual determination that will be reversed on appeal only if it is against the manifest weight of the evidence. Zeefe v. Zeefe (1998),125 Ohio App.3d 600,614, citing James v. James (1995),101 Ohio App.3d 668, and Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Judgments supported by some competent, credible evidence will not be reversed as being contrary to the manifest weight of the evidence. Zeefe, citing Seasons Coal Co.
 {¶ 10} In this case, the evidence supports the trial court's determination that appellant failed to present sufficient evidence to trace the American General retirement account to a premarital source. The evidence showed that appellant worked for his brother's construction company, earning $40,000 per year in base salary, and periodically receiving substantial bonuses. The parties had several retirement funds; the trial court found all of them to be marital. Appellant challenges this finding only with respect to the American General retirement account. He contends he presented sufficient evidence to trace this account to a Nation-wide/First Trust account that was established in March 1989, prior to the parties' marriage. He further contends that the Nationwide account became the American General account "during 1999." However, appellant was only able to produce three account statements from the 14-month period between March 1989 to March 2003 in support of his contentions. As the trial court noted, "the dates on the statements reveal multiple gaps of several months."
 {¶ 11} Appellant asserts that it was not necessary for him to show a "continuous annual trail of documents" to satisfy the preponderance of the evidence standard needed to prove that the retirement asset was his separate property. However, it is noteworthy that when appellant was asked at trial if he had documents that traced the Nationwide account to the American General account, he responded, "No, I tried to find as much documents [as I could] because [my attorney] said it had to be connected all the way and if I could have connected it all the way I would [have]." Given the substantial gaps in the documentary evidence linking the American General retirement account to the premarital Nationwide retirement account, and given the fact that the parties collected a considerable amount of assets during their marriage, in general, and several retirement assets in particular, we conclude that there was sufficient evidence to support the trial court's determination that appellant failed to sufficiently trace the American General retirement account to a premarital source.
 {¶ 12} Appellant's first assignment of error is overruled.
 {¶ 13} Appellant's Assignment of Error No. 2:
 {¶ 14} "Once the trial court determined that the marriage terminated, prior to the final hearing, [sic] on January 1, 2002, the court erred when it included the Yamaha Waverunners as marital property."
 {¶ 15} Appellant argues that the trial court erred by classifying the Yamaha wave runners, which he purchased for $1,150, as marital property. He contends that because he purchased the wave runners on September 30, 2002, which was after the marriage termination date of January 1, 2002, the wave runners are his separate property, and the trial court should not have ordered that appellee be given an offset of $1,150 for them. We agree with this argument.
 {¶ 16} "Assets acquired before or after the period which the court defines as the duration of the marriage are separate." Sowald Morganstern, Domestic Relations Law (2002) 589, Section 12:10. Generally, separate property must be disbursed to the spouse who owns it. R.C. 3105.171(D).
 {¶ 17} Here, the evidence showed that appellant purchased the Yamaha wave runners on September 30, 2002, which was after the January 1, 2002 marriage termination date established by the trial court. Consequently, the trial court erred by classifying this asset as marital property and giving appellee an offset for it.
 {¶ 18} Appellee points out that appellant testified at trial that the wave runners were purchased "during the marriage," and asserts that if he had denied the wave runners were marital property, she would have cross-examined him regarding whether he had used marital funds to purchase them. We find this argument unpersuasive.
 {¶ 19} The phrase "during the marriage" is a term of art in divorce law, and is defined in R.C. 3105.171(A) as follows:
 {¶ 20} "(2) `During the marriage' means whichever of the following is applicable:
 {¶ 21} "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of marriage through the date of the final hearing in an action for divorce or in an action for legal separation.
 {¶ 22} "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates specified by the court."
 {¶ 23} In this case, the trial court determined that it was equitable to choose January 1, 2002 as the marriage's termination date. However, at the time appellant testified, the trial court had not yet established the marriage's termination date. Therefore, appellant's testimony that he purchased the wave runners "during the marriage" is not controlling on the issue of whether those assets are marital or separate property. The evidence plainly shows that appellant purchased the wave runnersafter the marriage's termination date; therefore, they are his separate property, and the trial court erred by ruling otherwise.
 {¶ 24} Appellant's second assignment of error is sustained.
 {¶ 25} Appellant's Assignment of Error No. 3:
 {¶ 26} "Once the court determined that the marriage terminated, prior to the final hearing, [sic] on january 1, 2002, the court erred by refusing to permit luke to re-open his case solely to present the appropriate statements to conform with the de facto termination date."
 {¶ 27} Appellant argues that the trial court abused its discretion by refusing to allow him to re-open his case to permit him to present a December 31, 2001 statement regarding one of the parties' other retirement accounts, i.e., the Salomon Smith Barney account, which, according to appellant, would have resulted in the trial court's finding that a contribution that was made to that account in September 2002 was his separate property. We disagree with this argument.
 {¶ 28} The term "abuse of discretion" means that the trial court's judgment is "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. "The abuseof-discretion standard is based upon the principle that a trial court must have the discretion in domestic relations matters to do what is equitable given the facts and circumstances of each case." Jefferies v. Stanzak (1999),135 Ohio App.3d 176,179, citing Booth v. Booth (1989),44 Ohio St.3d 142,144.
 {¶ 29} The issue of the marriage's termination date is one that must be determined in every case where the division of marital assets is at issue. See R.C. 3105.171. If foreknowledge of the marriage's termination date was critical to the evidence that either party needed to present, then either of them could have sought to enter into a stipulation with the other regarding that date. There was no evidence that either party attempted to enter into such a stipulation. Consequently, we cannot find that the trial court abused its discretion by overruling appellant's motion to re-open the case to allow him to present additional evidence to conform to the trial court's chosen marriage termination date.
 {¶ 30} Appellant's third assignment of error is overruled.
 {¶ 31} Appellee's Cross-assignment of Error No. 1:
 {¶ 32} "The trial court erred in limiting the attorney fee award to $500 from luke to stephanie."
 {¶ 33} Appellee presents three arguments. First, she contends that the trial court erroneously limited her award of attorney fees to $500, pursuant to Clermont County Domestic Relations Local Rule 57 (hereinafter, Clermont D.R. 57),[1] due to her failure to present "testimony as to whether the case was complicated by any factor which necessitated extra time being spent on the case." She asserts that the trial court "waived" the need for her to present such testimony in light of its ruling on appellant's objection to admission of her Exhibit W, which contained an itemized list of her attorney fees and her attorney's affidavit in support.
 {¶ 34} At the close of the trial, appellee offered her exhibits into evidence, including Exhibit W, which contained an itemized statement of her attorney fees and an affidavit in support of her request for attorney fees. When the trial court asked appellant's counsel if he had any objections to admitting any of appellee's exhibits, the following exchange took place:
 {¶ 35} "MR. WHITE [appellant's counsel]: Exhibit W, Your Honor, which is a statement for attorney's fees.
 {¶ 36} "THE COURT: Okay, your position on that?
 {¶ 37} "MS. RODENBERG [appellee's counsel]: Your Honor, as for attorney's fees I did submit an affidavit with it as well but I'd be happy to offer corroborating testimony if the Court desires. It's my understanding under the local rules that it can be by affidavit or by testimony.
 {¶ 38} "THE COURT: So I'm going to overrule that, let that in over objection."
 {¶ 39} Appellee asserts that with this ruling, the trial court "waived" Clermont D.R. 57's requirement that she present "testimony as to whether the case was complicated by any factor which necessitated extra time being spent on the case." We disagree with this assertion. In the portion of the transcript cited by appellee, the trial court was merely overruling appellant's objection to the admission of appellee's Exhibit W; it was not affirmatively waiving appellee's obligation to present evidence that her case was complicated by a factor or factors that necessitated the expenditure of extra time. At most, the trial court's ruling could be viewed as allowing appellee to present her case on the issue of attorney fees through the use of affidavits rather than testimony. However, a review of the affidavit that appellee submitted along with her itemized statement of her attorney fees shows that she did not provide any evidence that "the case was complicated by any factor which necessitated extra time being spent on the case." Clermont D.R. 57(A)(2). She also did not provide any evidence regarding her "attorney's years in practice," as required by Clermont D.R. 57(A)(3). Because appellee failed to comply with the provisions of Clermont D.R. 57(A), the trial court was obligated to limit her award of attorney fees to $500. See Clermont D.R. 57(B).
 {¶ 40} Appellee also argues that the trial court erred or abused its discretion in overruling her motion for attorney fees without scheduling a hearing on her motion. We disagree with this argument. Appellee was never prevented from introducing any evidence she wished on the issue of attorney fees, and she had ample opportunity to do so.
 {¶ 41} Appellee's cross-assignment of error is overruled.
 {¶ 42} The trial court's judgment is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this opinion and in accordance with law.
Young, P.J., and Powell, J., concur.
[1] {¶ a } Clermont County Domestic Relations Local Rule 57 states, in relevant part, as follows:
{¶ b} "DR 57. Evidence in Support of Motion
 {¶ c} "(A) At the time of the final hearing on the motion or pleading that gives rise to the request for attorney fees, the attorney shall present:
{¶ d} "(1) an itemized statement describing the services rendered, the time for such services, the requested hourly rate, and necessary expenses and cost for litigation;
{¶ e} "(2) testimony as to whether the case was complicated by any factor which necessitated extra time being spent on the case;
{¶ f} "(3) testimony regarding the attorney's years in practice and experience in domestic relations cases; and
{¶ g} "(4) evidence of the defending party's ability to pay, and of the moving party's need for an award of attorney fees, if not otherwise disclosed during the hearing.
{¶ h} "(B) Failure to comply with the provisions of this rule shall result in the denial of a request for attorney fees in excess of $500.00, unless jurisdiction to determine the issue of fees is expressly reserved in any order resulting from the hearing."