[Cite as *Lee v. Lee*, 2013-Ohio-2849.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


PETER SANGDON LEE : JUDGES:
:
: Hon. W. Scott Gwin, P.J.
Plaintiff - Appellant : Hon. Sheila G. Farmer, J.
: Hon. Craig R. Baldwin, J.
:
-vs- :
:
:
JESSICA Y. LEE : Case No. 12 CAF 09 0068
:
:
Defendant - Appellee : O P I N I O N


CHARACTER OF PROCEEDING: Appeal from the Delaware County
Court of Common Pleas, Domestic
Relations Division, Case No. 10-DR-
A-12-639



JUDGMENT: Reversed and Remanded



DATE OF JUDGMENT: June 25, 2013




APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

ANDREW S. GROSSMAN                         DAVID J. GORDON
32 W. Hoster Street, Suite 100             40 N. Sandusky Street
Columbus, OH 43215                         Delaware, OH 43015

*Baldwin, J.*

{¶1}    Plaintiff-appellant Peter Sangdon Lee appeals from the August 23, 2012 Judgment Entry Decree of Divorce issued by the Delaware County Court of Common Pleas Domestic Relations Division.

STATEMENT OF THE FACTS AND CASE

{¶2}    Appellant Peter Sangdon Lee and appellee Jessica Young Lee were married on March 11, 2000. Two children were born as issue of such marriage, namely, Eunice Y. Lee (DOB 4/22/04) and Abigail H. Lee (DOB 10/24/06).

{¶3}    On December 13, 2010, appellee filed a complaint for divorce against appellant. Appellant filed an answer and counterclaim on January 4, 2011. A trial before a Magistrate was held on November 2, 2011.

{¶4}    At the trial, appellee testified that she had a Bachelor of Arts degree in fine art from the Fashion Institute of Technology in New York and that appellant had a four year degree from a University in Korea and a two year degree from Brooklyn Tech. Appellant studied to be a dental lab technician. Appellee testified that she paid for appellant's two year degree while working full time.

{¶5}    At the time of the parties' marriage, appellee was working as an associate designer at Liz Claiborne earning $45,000.00 a year. Appellee testified that she worked there for two and a half years before working for approximately one year for a small company called Peninsula in New York.  Appellee left Peninsula in 2003 and then worked for DZ Group in New York City. She worked there for approximately two and a half years and earned $65,000.00 a year. After being let go after about a year, appellee worked as a freelancer earning in the $60,000 range for approximately one year.

{¶6}     In late 2005, appellee moved from New York to New Albany, Ohio to work for Abercrombie and Fitch where she earned $87,500.00 a year. Appellee testified that she worked there for five years and three months before being terminated in February of 2011 for not meeting company standards.  According to appellee, she began working for Mast Industry in April of 2011 earning $96,000.00 a year.

{¶7}     Appellee testified that, when the parties married, appellant was working as a dental lab technician in Connecticut and was earning approximately $18,000.00 to $20,000.00 a year before he was terminated in 2000. She testified that appellant was unemployed for awhile and that they decided that he should attend a two year dental lab technician training program at Brooklyn Tech so that he could obtain a certificate to work as a dental lab technician. Appellant attended the school from 2001 through 2003.  After finishing the course, appellant worked for about a year at Jason Kim Dental before, in 2004, becoming employed  by Bayside Dental Lab in Bayside, New York. Appellee did not recall how much appellant made at Bayside, but testified that he worked there for one to one and a half years before quitting because he was unhappy.

{¶8}     Appellee testified that appellant then worked for Prime Dental in New York where he made $500.00 to $600.00 a week as a subcontractor until the parties moved to Ohio. She testified that appellant then worked for a company in Dublin, Ohio earning $13.00 an hour and that he averaged about 40 hours a week.

{¶9}     In Ohio, the parties formed a dental lab company called Limelite Service, Inc.  Appellee was the bookkeeper for the company and acted a liaison with dentists. According to appellee, the company had $10,000.00 a month in sales for two or three

months and then business dried up and stopped.  The lab made approximately $16,029 in 2007, $37,198.97 in 2008, $12,354.84 in 2009, and $13,231.20 in 2010.

{¶10}  At the trial, appellee testified that they bought their first home, a co-op, in 2003 in Forest Hills, New York for $182,500.00. When asked where the $36,500.00 down payment came from, appellee testified that her parents gave it to her. The parties sold the co-op in 2006 for $268,000.00 and received a check for approximately $101,000.00 at the closing.  In 2006, the parties purchased the marital home in Lewis Center, Ohio for $366,000.00 and made a down payment of $70,498.40 using the proceeds from the co-op. The marital home was sold in September of 2011 for $330,000.00 and the parties cleared $32,081.50.

{¶11}  Appellee testified that appellant had only seen the girls four times since she had been in New York, even though he lived five train stops away. She also testified that she had not received any money from appellant to help with the children since filing for divorce.   Appellee paid for the children's health insurance, childcare and expenses during the pendency of the case.

{¶12}  On cross-examination, appellee testified that her parents gave the money to her and appellant as a loan.

{¶13}  Appellant testified that, at the time of the trial, he was unemployed and had been since 2010 when he was operating Limelite.  He testified that he moved to New York in February or March of 2011 and was living with his parents. When asked, appellant testified that he had been looking for work. Appellant further testified that, before the parties moved to Ohio, he was working in New York earning about $20,000.00 a year while in training. He testified that he paid for his additional training in New York by

working. According to appellant, the money from appellee's parents was a gift to both of them. He testified that appellee's father told him that he was giving both of them the money so that appellant's name could be on the title to the co-op.

{¶14} Appellant also testified that he wanted to get his own apartment in New York, but did not have the financial ability to do so. Testimony was adduced that appellant has hepatitis B and takes medication. Appellant testified that, due to treatment for hepatitis, his one eye is blurry and he lacks energy.

{¶15} On cross-examination, appellant admitted that he had had only two job interviews.

{¶16} Following the trial, the Magistrate issued a Decision on November 3, 2011. Both parties filed objections. Subsequently, a Judgment Entry Decree of Divorce was filed on August 23, 2012.

{¶17} Appellant now raises the following assignments of error on appeal:

{¶18} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED THE APPELLANT TO PAY CHILD SUPPORT OF $216.85 PER MONTH COMMENCING NOVEMBER 1, 2011."

{¶19} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED APPELLANT TO PAY CHILD SUPPORT IN THE AMOUNT OF $717.12 PER MONTH UPON OBTAINING EMPLOYMENT AND NO LATER THAN NOVEMBER 1, 2012."

{¶20} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT IMPUTED INCOME TO APPELLANT FOR PURPOSES OF CALCULATING

CHILD SUPPORT AND SPOUSAL SUPPORT."

{¶21} "IV.   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED NEITHER PARTY TO PAY SPOUSAL SUPPORT TO THE OTHER, AND, MORE SPECIFICALLY, FAILED TO ORDER SPOUSAL SUPPORT PAYABLE BY APPELLEE TO APPELLANT."

{¶22}   "V.    THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT MADE THE FINDING THAT THE PROCEEDS FROM THE SALE OF THE FARMER'S DELIGHT PROPERTY IN THE AMOUNT OF $32,257.63 IS APPELLEE'S SEPARATE PROPERTY."

{¶23}   For purposes of judicial economy, we shall address the assignments of error out of sequence.

III

{¶24}   Appellant, in his third assignment of error, argues that the trial court erred when it imputed income to appellant for purposes of calculating child and spousal support. We agree.

{¶25}   In the case sub judice, the trial court ordered appellant to pay child support in the amount of $209.91 per month commencing November 1, 2011 based upon imputing income to appellant in the amount of $16,016.00 a year (minimum wage). The trial court also ordered appellant to pay child support in the amount of $717.12 per month upon appellant's obtaining employment and no later than November 1, 2012. This amount was based upon an imputed income of $13.00 an hour, or $27,040.00 a year. The trial court, after imputing income to appellant in the amount of $27,040.00 a year, ordered that neither party would pay spousal support to the other.

{¶26}  A trial court has discretion in the calculation of child support and the appellate court will not disturb a child support order absent a showing of an abuse of discretion. *Pauly v. Pauly,* 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997).  In order to calculate child support, the trial court must determine the parent's income. The imputation of income is a matter "to be determined by the trial court based upon the facts and circumstances of each case." *Rock v. Cabral,* 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), paragraph one of the syllabus. A determination with respect to these matters will only be reversed upon a showing of abuse of discretion. *Id.* In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 317, 219, 450 N.E.2d 1140 (1983).

{¶27}  This Court also reviews the trial court's decision relative to spousal support under an abuse of discretion standard. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). R.C. 3105.18(C)(1) lists 14 factors a trial court must consider in determining whether spousal support is appropriate and reasonable, including the "income" and "earning abilities" of each party. R.C. 3105.18(C)(1)(a), (b). "When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a 'person could have earned if he made the effort." *Seaburn v. Seaburn,* 5th Dist. No.2004CA00343, 2005–Ohio–4722, ¶ 32; citing *Beekman v. Beekman*, 10th Dist. No. 90AP–780, 1991 WL 160062 (Aug. 15, 1991). Therefore, "Ohio courts often impute

income to parties who are voluntarily underemployed or otherwise not working up to their full earning potential." *Id.* at ¶ 33.

{¶28}   Recently, in *Schley v. Gillum*, 5th Dist. No. 11 CAF 10 0098, 2012-Ohio-2787, the appellant argued that the trial court had erred in imputing income to him for the purposes of calculating child support without first finding that he was voluntarily unemployed or underemployed.  In reversing the judgment of the trial court, this Court, in such case, stated, in relevant part, as follows: "The Ninth District Court of Appeals holds that the trial court must make an explicit finding of voluntary unemployment or underemployment before it imputes income to a parent for child support purposes. *See, e.g., Musci v. Musci,* 9th Dist. No, 23088, 2006–Ohio–5882, at ¶ 17; *Ramskogler v. Falkner,* 9th Dist. No. 2286, 2006–Ohio–1556, at ¶ 15; *Misleh v. Badwan,* 9th Dist. No. 23284, 2007–Ohio–5667, at ¶ 5, 173 Ohio App.3d 575, 879 N.E.2d 806.

{¶29}   "The Fifth District Court of Appeals has not adopted the 'explicit finding' standard as established by the Ninth District Court of Appeals. Rather, in *Snyder v. Snyder,* 5th Dist. No.2008CA00219, 2009–Ohio–5292, at ¶ 37, we held there is no 'magic language' requirement in deciding if an individual is voluntarily unemployed or underemployed. *See also Winkelman v. Winkelman,* 11th Dist. No.2008–G–2834, 2008–Ohio–6557; *Thaher v. Hamed,* 10th Dist. No. 09AP–970, 2010–Ohio–5257.

{¶30}   "In *Snyder,* we reviewed a case where the appellant argued the trial court erred by failing to explicitly find he was either voluntarily unemployed or underemployed before imputing income to the appellant for child support purposes. The trial court reviewed the appellant's education and employment history, in relation to his health circumstances and his school-age children's needs. *Id.* at ¶ 32–34. The appellant had

an associate's degree in electrical engineering and communications, a bachelor's degree in psychology, and he was pursing his MBA. The appellant was not employed full-time but did some part-time substitute teaching. The appellant submitted to an occupational wage evaluation, which concluded he had an earning potential to earn $32,500 and $79,227. The trial court found, based on the facts and circumstances, there was no 'valid reason for the [appellant] not to be employed full-time' and therefore imputed an income to the appellant of $32,500 for child support purposes. *Id.* at ¶ 34, 37. We held the trial court's review of the facts and circumstances coupled with the statement there was no valid reason for the appellant not be employed full time was sufficient to comply with the R.C. 3119.01(C)(11) requirement that a finding of voluntary unemployment or underemployment must be made before imputing income for child support purposes. *Id.* at ¶ 37.

{¶31} "The present case [referring to the *Schley* case] is distinguishable from *Snyder.* Like *Snyder,* the magistrate reviewed the facts and circumstances of Mother's employment history, educational background, and the needs of her child. But unlike *Snyder,* the magistrate imputes an income to Mother in the amount of $26,000 without any related statement, explicit or otherwise, as to the voluntary nature of Mother's unemployment or underemployment." Id at paragraphs 17-20.

{¶32} In the case sub judice, the trial court imputed income to appellant for purposes of both spousal and child support without making any related statement, explicit or otherwise, as to the voluntary nature of appellant's unemployment or underemployment. On such basis, we sustain appellant's third assignment of error.

{¶33} Appellant's third assignment of error is, therefore, sustained.

I, II, IV

{¶34}  Based on our disposition of appellant's third assignment of error, appellant's first, second and fourth assignments of error, all which involve spousal and child support, are moot.

V

{¶35}  Appellant, in his fifth assignment of error, argues that the trial court erred when it awarded appellee the proceeds from the sale of the marital home in the amount of $32, 257.63[1] as appellee's separate property.  The trial court, on page 8 of its Judgment Entry, indicated that the money was appellee's separate property.

{¶36}  We review a trial court's classification of property as marital or separate under a manifest weight of the evidence standard and will affirm if the classification is supported by some competent, credible evidence. *Taub v. Taub,* 10th Dist. No. 08AP750, 2009–Ohio–2762, ¶ 15. Marital property is defined as "all real and personal property that is currently owned by either or both spouses ... that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). However, marital property does not include any separate property.  Separate property is defined in R.C. 3105.171(A)(6)(a) in relevant part, as follows: "(vii) Any gift or real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been give to only one spouse." A party to a divorce action seeking to establish an asset or portion of an asset is separate property, rather than marital property, has the burden of proof generally by a preponderance of the evidence. *Zeefe v. Zeefe,* 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (8th Dist.1998).

---

[1] This figure included a $100.00 refund from the homeowner's association and a $76.31 refund of escrow.

{¶37}   As is stated above, appellee testified that the $36,500.00 down payment on their first home a co-op, came from her parents. While she testified on direct that her parents gave her the money, on cross-examination, she clearly testified that her parents gave the money to both her and appellant as a loan to assist them in purchasing the co-op, which  was owned in both of their names.  Subsequently, after the parties sold the co-op, they received a profit of $101,000.00 and used a large portion of such profit as a down payment on the Ohio marital home. After the marital home was sold, the trial court awarded the proceeds to appellee as her separate property.

{¶38}   Based on appellee's own testimony that the money was given to both parties as a loan, we find that the trial court erred in awarding appellee the $32,257.63 as her separate property.

{¶39}   Appellant's fifth assignment of error is, therefore, sustained.

{¶40}   Accordingly, the judgment of the Delaware County Court of Common Pleas Domestic Relations Division is reversed and this matter is remanded for further proceedings.


By: Baldwin, J.

Gwin, P. J. and

Farmer, J. concur.


 

HON. CRAIG R. BALDWIN


 

HON. W. SCOTT GWIN


 

HON. SHEILA G. FARMER

[Cite as *Lee v. Lee*, 2013-Ohio-2849.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

PETER SANGDON LEE                    :
                                     :
    Plaintiff - Appellant            :
                                     :
-vs-                                 :               JUDGMENT ENTRY
                                     :
JESSICA Y. LEE                       :
                                     :
    Defendant - Appellee             :               CASE NO. 12 CAF 09 0068


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, Domestic Relations Division, is reversed and remanded. Costs assessed to appellee.


_____
HON. CRAIG R. BALDWIN


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER