[Cite as *Koneski v. Koneski*, 2025-Ohio-38.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STEPHANIE N. KONESKI | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| JERRY D. KONESKI | : | Case No. CT2024-0020 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING: Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. DA2022-0222


JUDGMENT: Affirmed


DATE OF JUDGMENT: January 8, 2024


APPEARANCES:

For Plaintiff-Appellee

ROSE M. FOX
233 Main Street
Zanesville, OH 43701

For Defendant-Appellant

BRIAN W. BENBOW
803 Taylor Street
Zanesville, OH 43701

*King, J.*

{¶ 1}   Defendant-Appellant, Jerry D. Koneski ("husband"), appeals the January 17, 2024 judgment entry decree of divorce of the Court of Common Pleas of Muskingum County, Ohio, Domestic Relations Division, contesting the division of property.  Plaintiff-Appellee is Stephanie N. Koneski ("wife").  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   The parties were married on December 16, 2010.  On April 13, 2022, wife filed a complaint for divorce.  A final hearing was held on July 20, 2023.  By judgment entry decree of divorce filed January 17, 2024, the trial court granted the parties a divorce and divided the parties' property.  Pertinent to this appeal are the decisions on a piece of real estate located on Claysville Road and the insurance proceeds from an automobile (Lexus) totaled in an accident.  The trial court determined the Claysville property was marital property due to commingling of funds, sweat equity by wife, and the joint deed in both parties' names.  The trial court also determined wife was entitled to the insurance proceeds as the automobile had been a gift from husband.

{¶ 3}   Husband filed an appeal with the following assignments of error:

I

{¶ 4}   "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING THAT THE NONEXISTENT, NON-SPECIFIED, AND NON-SPECIFIC 'SWEAT EQUITY' IN APPELLANT'S REAL ESTATE WAS MARITAL PROPERTY SUBJECT TO EQUAL DIVISION DUE TO THE NONEXISTENT ACTIVE CONTRIBUTIONS OF APPELLEE NOT CONTAINED ANYWHERE ON THE RECORD.

"THE TRIAL COURT'S FINDINGS AND CONCLUSIONS AS SUCH WERE AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND CONTRARY TO THE SPECIFIC UNREBUTTED, AND UNDISPUTED TRACING OF PRE-MARITAL EQUITY SUBMITTED BY APPELLANT THAT THE TRIAL COURT SUMMARILY IGNORED. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR ACCORDINGLY BY FINDING THAT THE EQUITY IN THE REAL ESTATE WAS MARITAL PROPERTY SUBJECT TO EQUAL DIVISION DUE TO COMMINGLING WHEN SAID EQUITY WAS DIRECTLY TRACED TO ITS ORIGIN AS BEING PRE-MARITAL EQUITY.

"THE TRIAL COURT THUS COMMITTED PREJUDICIAL ERROR BY FAILING TO AWARD APPELLANT HIS SEPARATE INTEREST IN THE EQUITY IN HIS REAL ESTATE. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING THAT THE EQUITY IN THE REAL ESTATE WAS MARITAL PROPERTY SUBJECT TO EQUAL DIVISION DUE TO THE ALLEGED 'SWEAT EQUITY' CONTRIBUTIONS THAT WAS NONEXISTENT RESULTING IN UNJUST ENRICHMENT TO APPELLEE."

II

{¶ 5} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ADMITTING INADMISSIBLE EVIDENCE IN ARRIVING AT AN AWARD OF ½ OF THE EQUITY IN THE MARITAL HOME TO APPELLEE ($96,500.00 (½ OF $193,200.00)) ABSENT ANY EVIDENCE AS TO THE ACTUAL VALUE OF THE ALLEGED ACTIVE CONTRIBUTIONS MADE TO THE VALUE OF THE REAL ESTATE THAT WERE TRACED TO THE ORIGIN OF APPELLANT'S PREMARITAL INTEREST."

III

{¶ 6} "THE TRIAL COURT'S CONTINUED RELIANCE ON THE ALLEGED JOINT TITLING OF THE REAL ESTATE IS CONTRARY TO LAW."

IV

{¶ 7} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING THAT THE EQUITY IN THE 2012 LEXUS WAS SEPARATE PROPERTY NOT SUBJECT TO DIVISION AND BY AWARDING THE SAME EXCLUSIVELY TO APPELLEE DUE TO A NON-EXISTENT MARITAL GIFT SUCH THAT THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I, III

{¶ 8} In his first assignment of error, husband claims the trial court erred in finding the Claysville property was marital property; he claims the decision was against the manifest weight and sufficiency of the evidence.

{¶ 9} In his third assignment of error, husband claims the trial court's reliance on the joint titling of the real estate was contrary to law.

{¶ 10} We disagree with husband's arguments.

{¶ 11} In divorce proceedings, a trial court shall "determine what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). R.C. 3105.171(A)(6)(a)(ii) defines "separate property" as including "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." Marital property can include "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). "[T]he holding of title to property by one spouse individually or by both spouses in a form of co-

ownership does not determine whether the property is marital property or separate property."  R.C. 3105.171(H).  But the trial court may consider the ownership of the property in its determination of traceability.  *Barkley v. Barkley,* 119 Ohio App.3d 155, 161 (4th Dist. 1997) ("the form of title is relevant to, but not conclusive of, the classification of property as being *either* marital or separate").  "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."  R.C. 3105.171(A)(6)(b).

{¶ 12} The focus on a determination of separate property is on traceability.  *Peck v. Peck*, 96 Ohio App.3d 731 (12th Dist. 1994).  "A party who wants an asset classified as separate property bears the burden of tracing that asset to his or her separate property."  *Gregory v. Falcon*, 2023-Ohio-1741, ¶ 36 (5th Dist.).  The burden to establish separate property is by a preponderance of evidence.  *Zeefe v. Zeefe,* 125 Ohio App.3d 600, 614 (8th Dist. 1998).  "Preponderance of the evidence" means "evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it."  *Black's Law Dictionary* (6th Ed. 1998).  The characterization of property as separate or marital is a mixed question of law and fact, and the characterization must be supported by sufficient, credible evidence.  *Chase-Carey v. Carey,* 1999 WL 770172 (5th Dist. Aug. 26, 1999).

{¶ 13} Sufficiency of the evidence "is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law."  *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

{¶ 14} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983). In *Thompkins* at 387, quoting *Black's Law Dictionary* (6th Ed. 1990), the Supreme Court of Ohio explained the following:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis in original.)

{¶ 15} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman,* 2012-Ohio-2179.

{¶ 16} In 1994, husband and his then wife Louise jointly owned property on Woodhaven Drive through a survivorship deed. T. at 118, 144. Louise died in 2006. T.

at 153-154. Husband and wife married in 2010; she was 17 and he was 65. T. at 117. Wife agreed she did not bring any assets into the marriage. *Id.* In 2012, husband filed an affidavit to transfer the Woodhaven property into his name. T. at 154, 419; Defendant's Exhibit E. At some point, wife's name was added to the deed. T. at 240. Husband and wife lived at Woodhaven Drive for eight years. In 2019, the property was sold listing both parties as the sellers. T. at 240; Defendant's Exhibit M.

{¶ 17} Wife testified over the course of a couple years, the parties purchased, fixed-up, and sold several properties ending with the Claysville property. T. at 42-43. The property was deeded in both their names via a general warranty survivorship deed. T. at 43-44; Plaintiff's Exhibit 14. The properties prior to Claysville were deeded in both their names as well. T. at 53-55, 57, 61; Defendant's Exhibits N, O, and P. One of the properties, Taylor Road, had a mortgage and wife was listed on that mortgage. T. at 57-58; Defendant's Exhibit O. Wife helped to fix-up the properties as they did the work themselves, they did not hire anyone for the most part. T. at 51-52, 56, 58-59, 62-63. Wife also sold the properties saving them a real estate commission. T. at 62-63.

{¶ 18} On cross-examination, wife agreed with each property purchase, the equity could be traced back to the Woodhaven property. T. at 150-151, 154-158, 161-162.

{¶ 19} Husband testified he bought the Woodhaven property in 1997 prior to the marriage, and sold it in 2019 after the marriage. T. at 422; Defendant's Exhibit M. The net proceeds from the sale equaled $246,617.46. T. at 423. Husband then purchased property in 2019 on Freedom Road with the proceeds. T. at 423-424. He sold the Freedom property and realized a $173,500 net profit and purchased a property on Taylor Road. T. at 425; Defendant's Exhibit N. He had to take out a brief mortgage to complete

the purchase. *Id.* He sold the Taylor property and realized a $263,386.79 gain. T. at 426; Defendant's Exhibit O. He then bought a property on Johnnycake and sold it for $200,034.00. T. at 426-427; Defendant's Exhibit P. With those proceeds, he purchased the subject Claysville property. T. at 427; Defendant's Exhibit Q. Husband stated the money he used to buy the Claysville property could be traced back to the Woodhaven sale; he used the equity from each sale to purchase the next property. T. at 423-429, 436; Defendant's Exhibit Q. Husband wanted the trial court to find the Claysville property was "pre-marital equity not subject to division." T. at 520. He did not intend to gift wife any real estate and placing her name on the deeds was for estate planning purposes. T. at 550.

{¶ 20} On cross-examination, husband acknowledged all but two properties were sold by owner and wife is the one who posted about them and handled the sales. T. at 531-534. He characterized wife's home improvement work on the properties as "maintenance." T. at 534. When asked if wife's earned income was deposited into a joint account, husband admitted he did not know as wife did the banking. T. at 527-528.

{¶ 21} The trial court noted the parties' joint ownership of the properties, including their first property together, the Woodhaven property, their work in flipping the various properties purchased after the Woodhaven property was sold, and wife's selling of the properties to avoid relator fees. *See* January 17, 2024 Judgment Entry Decree of Divorce at 7-8. The trial court also noted wife's name on the Taylor Road mortgage. *Id.* at 7. The trial court found husband "produced no documentation to trace any funds from the sale of his pre-marital residence." *Id.* at 8. The trial court found wife's testimony to be credible "that the parties jointly improved the property while they lived there for eight years and

utilized the sale proceeds to invest in the next jointly titled property they flipped." *Id.* The trial court found the "proceeds from every subsequent property they flipped was utilized to purchase each jointly titled property they subsequently purchased and flipped. All of those funds together were utilized to purchase the marital residence." *Id.* The trial court acknowledged wife's sweat equity contributions and noted she worked part time during the marriage and the parties' monies went into a joint bank account. *Id.* The trial court found husband's testimony that wife's name was on the deeds only for estate planning purposes and he did not intend to gift any real estate to her was not credible as it was "clear the parties jointly contributed to every property flip they engaged in, including improvements and sale of the original home." *Id.* The trial court concluded any proceeds from the sale of husband's pre-marital home were "completely co-mingled" and became marital because of wife's sweat equity in improving the properties thus helping to increase their values and her role in selling the properties the proceeds of which were used to purchase jointly owned properties. *Id.* The trial court found the Claysville property to be marital property, took the listed value, $193,120.00, and awarded half to each party. *Id.* at 11. Husband retained the property. *Id.*

{¶ 22} The testimony demonstrates husband placed wife's name on the original Woodhaven property. After it was sold, there is no evidence to show where the proceeds were deposited i.e., a joint account or an account solely in husband's name. The parties continued to jointly purchase properties and flip them. While husband submitted sales contracts for the properties, he never produced evidence showing where the funds went after each sale. No evidence was presented to trace the equity from the sale of the Woodhaven property to the purchase of the Claysville property; there was no showing

that the funds after each sale were not commingled and the equity remained husband's separate property. *See Bello v. Bello*, 2009-Ohio-5982, ¶ 89 (5th Dist.), citing *Peck,* 96 Ohio App.3d 731 ("There was no direct tracing of the original assets"). Although husband testified to the traceability, it was within the trial court's province to judge the weight of the evidence and the credibility of the witnesses, and the trial court did not find husband's testimony to be credible. *Jacobs v. Jacobs*, 2003-Ohio-3466, ¶ 42 (4th Dist.).

{¶ 23} The trial court found any proceeds from the sale of the premarital home were commingled to jointly purchase the subsequent properties to flip. We find no error in the trial court's decision. We find the decision is supported by competent, credible evidence; husband did not meet his burden of tracing the funds from the Woodhaven property to the Claysville property by the preponderance of the evidence.

{¶ 24} Upon review, we find the trial court did not err in finding the Claysville property was marital property.

{¶ 25} Assignments of Error I and III are denied.

II

{¶ 26} In his second assignment of error, husband claims the trial court erred in awarding wife half of the equity in the marital home. We disagree.

{¶ 27} A trial court "shall divide the marital and separate property equitably between the spouses" in accordance with R.C. 3105.171(B). Once the characterization of what constitutes marital property has been made, the actual distribution of the assets may be properly reviewed under the more deferential abuse-of-discretion standard. *See* R.C. 3105.171(D). We reiterate that as an appellate court, we generally review the overall appropriateness of the trial court's property division in divorce proceedings under an

abuse of discretion standard. *Cherry v. Cherry,* 66 Ohio St.2d 348 (1981). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 28} Wife testified the Guernsey County Auditor listed the Claysville property valuation as $193,120.00. T. at 45-47; Plaintiff's Exhibit 8. She believed the property was worth much more than that, but did not present any evidence to support her belief. T. at 50. Husband's attorney challenged the auditor's tax value as "not determinative of what a piece of real estate is worth," yet listed the auditor's amount in his marital balance sheet. T. at 46; Defendant's Exhibit B. The trial court accepted the amount presented by the parties and awarded each party half ($96,560.00), finding that to be appropriate, fair, and equitable.

{¶ 29} The parties purchased the property in 2020 for $253,000.00. Defendant's Exhibit Q. The property was awarded to husband and wife argued it was worth more than the auditor's valuation. If so, husband received more than wife; but both parties waived an appraisal.

{¶ 30} Upon review, given the state of the record, we find the trial court did not abuse its discretion in its valuation of the Claysville property and awarding half to each party.

{¶ 31} Assignment of Error II is denied.

IV

{¶ 32} In his fourth assignment of error, husband claims the trial court erred in finding the equity in an automobile was wife's separate property not subject to division; he claims the decision was against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 33} Wife testified she drove a 2012 Lexus titled in husband's name. T. at 67-68. A drunk driver smashed into several parked cars and the Lexus was totaled. *Id.* The insurance proceeds are in an account held by husband ($14,000+). T. at 68; Defendant's Exhibit C. Wife testified husband told her after their separation that she could have the vehicle as long as she paid all the fees on it; she paid half of the insurance and the tax and licensing fees each year. T. at 69.

{¶ 34} During husband's testimony, he was asked about the bank account containing the insurance proceeds. He agreed a prior separation agreement the parties had drawn up but never executed awarded the vehicle to wife. T. at 409-410. Husband further agreed the insurance money was "traceable funds that relate to the loss of the Lexus." T. at 410. The separation agreement also awarded the Claysville property to husband. T. at 435-436. Because husband sought to have that portion of the separation agreement enforced, he stated he wanted the trial court to also enforce the provision about the Lexus and award the insurance proceeds to wife. T. at 436. He signed the

separation agreement awarding the Lexus to wife and he wanted to be bound by it.  T. at 438.  He agreed wife would "retain the proceeds of the Lexus."  T. at 519.

{¶ 35} The trial court found husband gifted the Lexus to wife.  *See* January 17, 2024 Judgment Entry Decree of Divorce at 9.  The trial court noted husband agreed wife could have the insurance proceeds to purchase a new vehicle.  *Id.* at 9-10.  The trial court awarded wife all of the insurance proceeds, $13,692.47.  *Id.* at 11.

{¶ 36} Based upon husband's testimony, we agree with the trial court's finding that husband agreed wife could have the insurance proceeds.

{¶ 37} Upon review, we find the trial court did not err in awarding wife the insurance proceeds for the totaled Lexus.

{¶ 38} Assignment of Error IV is denied.

{¶ 39} The judgment of the Court of Common Pleas of Muskingum County, Ohio, Domestic Relations Division, is hereby affirmed.

By King, J.

Hoffman, P.J. and

Baldwin, J. concur.